## H. N. NORTON v. W. H. THOMAS & SONS COMPANY.

### No. 1526.    Decided March 19, 1906.

**1.—Antitrust Law.**

An agreement on a contract for sale of merchandise (whisky) that the vendor would not sell any liquor of that age and brand in either of three cities where the vendee was engaged in business till the latter had closed out his purchase was not prohibited by the antitrust law of 1899 (Acts of 1899, p. 246). (Pp. 580, 581.)

**2.—Same—Limiting Amount.**

The prohibition in section 1 of the antitrust law of 1899, of agreements "to fix or limit the amount or quantity of any article" embraces limitations on the amount or quantity in existence, not on that to be sold in or supplied to any particular community or territory. (Pp. 580, 581.)

**3.—Same—Limiting Sales.**

Section 6 of the Antitrust Law of 1899, prohibits agreements limiting trade, competition, etc., to members of the pool, trust, etc., and does not cover agreements not to sell within specified limits. (P. 581.)

**4.—Same—Cases Overruled.**

The rulings of the Courts of Civil Appeals in Troy Buggy Works v. Fife & Miller, 74 S. W. Rep., 956, and Simmons & Co. v. Terry, 79 S. W. Rep., 1103, disapproved. (P. 580.)

Question certified from the Court of Civil Appeals for the First District, in an appeal from Galveston County.

*R. H.* and *Alice S. Tiernan,* for appellant.—The undisputed evidence shows that the plaintiff, through its president, gave Norton the exclusive sale of the whisky, for the payment of which the notes herein sued on were given, in the towns of Beaumont, Houston and Galveston, Texas. This agreement was made in Galveston, Texas. This agreement being in contravention of the anti-trust statutes of Texas, ren-

dered the said contract null and void; hence the notes are null and void, and they can not be recovered on by the plaintiff. Troy Buggy Works v. Fife & Miller, 74 S. W. Rep., 956; Antitrust Statutes of Texas, Laws of 26th Leg., p. 346, chap. 146; Fuqua v. Pabst Brewing Co., 38 S. W., 30, 31; Act of Congress, August 8, 1890.

A contract whereby a retail merchant agreed to handle a manufacturer's or wholesaler's gloves exclusively, except so far as he should buy inferior or cheaper gloves from others, and by which the wholesaler or manufacturer agreed not to sell to any other merchant in the retailer's city, so that the latter should have the exclusive sale and control of the retail business in certain lines of gloves in that city, was in violation of the antitrust law of 1899, laws of 26th Leg., p. 246, making void any agreement to limit trade in any article or limit competition, and neither party could sustain any claim against the other on the contract. Francis Simmons & Co. v. Terry, 79 S. W. Rep., 1103, citing Troy Buggy Co. v. Fife & Miller, 74 S. W. Rep., 956; Columbia Carriage Co. v. Hatch, 47 S. W. Rep., 288; Pasteur Vaccine Co. v. Burkey, 54 S. W. Rep., 804; Texas Brewing Co. v. Templeman, 90 Texas, 277; Fuqua v. Pabst Brewing Co., 90 Texas, 298.

*E. P. Gailey,* for appellees.—An agreement made in Galveston, by appellee, with Norton, a wholesale dealer in whisky, not to sell the same brand of whisky to any other dealer in the towns of Houston, Beaumont and Galveston, is not in contravention of the antitrust statutes of Texas. Antitrust Statutes of Texas, Act of 1899, Laws of 26th Leg., p. 246, chap. 146; Gates v. Hooper, 90 Texas, 563; Vandeweghe v. American Brewing Co., 61 S. W., 526.

WILLIAMS, Associate Justice.—Certified question from the Court of Civil Appeals for the First District, as follows:

"The record on this appeal shows that in 1902 W. H. Thomas & Sons Company, incorporated under the laws of Kentucky, entered into a contract with H. N. Norton, resident of Galveston, Texas, whereby it agreed to sell to Norton fifty barrels of whisky of a named brand and age at a stipulated price per gallon. Under the agreement the corporation was to ship one hundred barrels from Germany to Galveston, the first fifty above named to be a credit sale, and Norton to have the option to take the second fifty barrels at the same price for cash. In pursuance of this agreement, the whisky was shipped to Galveston, and Norton took and finally paid for the first fifty barrels, according to the contract.

"The president of the corporation being in Galveston, sought to induce him to take the other fifty barrels, but Norton declined to exercise his option, giving business reasons. Thereupon the president of the corporation offered the whisky on a credit, the debt to be evidenced by Norton's notes. As a further inducement, the company agreed that it would not sell in Galveston, Beaumont or Houston (three points in which Norton was engaged in the liquor business) any liquor of that brand and age until Norton had closed out his purchase.

"Norton accepted the proposition, the remaining fifty barrels were

delivered to him, and his notes for the purchase money duly executed and delivered to the corporation.

"Norton having defaulted on the last two notes for $559.94 each, the corporation brought this suit to enforce their payment, and recovered judgment in the court below, and the cause is before this court on the appeal of Norton.

"One of his defenses in the court below was that the contract of sale was within the provisions of the antitrust law of 1899, and therefore void, and the question has arisen for our decision.

"In view of the holding in Troy Buggy Works v. Fife & Miller, 74 S. W., 956, the soundness of which we doubt, we respectfully certify for your decision: Was the contract void and the notes uncollectible by reason of the 'antitrust law' of 1899?"

Section 1 of the act referred to in the question (Acts 1899, p. 246) applies to agreements, etc., (1) "to regulate or fix the price of any article," etc.; or (2) "to maintain said price when so regulated or fixed"; or (3) "to fix or limit the amount or quantity of any article," etc.

Section 2 defines a "monopoly" as a "union or combination," etc., "of capital, credit," etc., whereby any of the purposes mentioned in the act is accomplished or sought to be accomplished, etc.

Sections 3 and 4 define other offenses, but their provisions are so clearly foreign to this case that they need not be stated.

Section 6 makes it unlawful for persons engaged in buying or selling articles, etc., to enter into any pool, trust, agreement, etc., "to control or limit the trade in such article," etc., "or to limit competition in such trade by refusing to buy from or to sell to any other person or corporation any such article," etc., "for the reason that such other person or corporation is not a member of or party to such pool, trust, agreement," etc. The section has further provisions against threats, boycotts, etc., which plainly have no application here.

The contract stated in the certificate does not in our opinion fall within any of the provisions of the act stated. It belongs to a class which are usually treated as contracts in restraint of or imposing restrictions upon trade or competition, and which have been dealt with by other statutes, such as that of 1889, 1895 and 1903. All of the decisions cited in support of the defense, except two, were based upon the other statutes. In the excepted cases (Troy Buggy Works v. Fife & Miller, 74 S. W., 956, and Francis T. Simmons & Co. v. Terry, 79 S. W., 1103) by the Courts of Civil Appeals for the Fourth and Fifth Districts, the courts seem to have followed the former decisions, without noticing the difference between the statutes upon which they were founded and the Act of 1899.

We think it quite clear that the terms of the statute last referred to do not embrace this case. The contract does not attempt to fix or regulate the price of the whisky, nor to fix or limit the amount or quantity thereof. It must be borne in mind that the provision of the statute against limitations on the amount or quantity of an article does not refer to the amount to be sold in or supplied to any particular community or territory, but to the amount or quantity in existence; that is, to

what is generally called the supply, or output. The contract imposes no limitation such as the statute, when thus understood, prohibits.

The sixth section might apply to the case but for the requirement that the pool, agreement, etc., to limit trade, or competition therein, by a refusal to sell to others besides the parties to the arrangement, must be for the reason that such others are not parties to it. By this it is made clear that the offense denounced does not consist simply of an agreement between two that one of them will not sell to others, but of an association which seeks to limit trade, or competition in trade, in some article, by confining the buying and selling thereof to the members of such pool, trust, agreement, etc., and by refusing to sell to, or buy from, others, for the reason that they have not become such members.

Since it is thus shown that none of the other sections apply to the case, it follows that the second has no application, because it refers only to unions, combinations, etc., for the purposes defined in the other sections. We therefore answer that the contract was not void, and the notes were not uncollectible by force of the Act of 1899.