## STATE OF TEXAS V. RACINE SATTLEY COMPANY.

Decided January 25, 1911.

**1.—Demurrer.**

A demurrer admits the facts alleged and every reasonable intendment arising from the allegations. See petition held to sufficiently charge defendants with a conspiracy in restraint of trade in violation of the statute, Act of March 31, 1903, Laws, 28th Leg., p. 119.

**2.—Unlawful Contract—Restraint of Trade.**

An agreement between two firms or corporations engaged in buying or selling certain articles of merchandise that the one would not buy from nor the other sell to any other person or association any other makes of like goods during the period of the contract, created a conspiracy and combination in restraint of trade prohibited by the law against trusts, monopolies and conspiracies, Act of March 31, 1903, Laws, 28th Leg., p. 119.

**3.—Same—Interstate Commerce.**

A contract made in another State between a foreign corporation and a Texas dealer that, for one year, the one would sell its goods only to and the

other buy only from the parties, respectively, if it contemplated future sales and purchases in Texas through traveling salesmen of the corporation (which the court can judicially recognize as the customary method of business) though the first purchase and sale was concluded outside of Texas and constituted interstate commerce, was not, as to such future sales to be made in Texas, an agreement in regard to interstate commerce nor beyond regulation by the laws of Texas prohibiting combinations and conspiracies in restraint of trade.

### 4.—Same—Conspiracy.

The fact that the only part performed by the non-resident corporation under its contract consisted in selling and shipping from another State the goods made the subject of the agreement between it and the purchaser which was unlawful under the Texas statutes, would not relieve it from liability because the same were acts of interstate commerce. The non-resident was a co-conspirator with the local dealer, and liable for the acts of the latter in conducting a business in pursuance of their mutual agreement which violated the Texas law.

### 5.—Interstate Commerce—Shipment and Sale—Original Packages.

Though goods shipped into the State in pursuance of a contract of sale outside it are subjects of interstate commerce while in the original packages, they lose that character when, the transportation being completed, they are unpacked and mingled with other goods for sale by the purchaser; and a contract by the seller with the purchaser with respect to the conduct of the business after they are so unpacked and mingled which was in unlawful restraint of trade was not protected from the operation of the State law so declaring it on the ground that the transaction was interstate commerce.

### 6.—Contract—Restriction of Trade—Blank as to Place.

Though a contract restricting trade in certain articles at a place left blank in the instrument, the ambiguity being a patent one, be incapable of being made certain by parol evidence as to the place intended so as to be made the basis of an action on the contract, it seems that it might still be held unlawful as a general restriction of trade in the articles, in an action to recover penalties for such act.

### 7.—Same.

An action for penalties for unlawful conspiracy or combination in restraint of trade is not one upon the contract creating such combination or restriction, nor dependent upon the validity of such instrument as a contract. The instrument was only evidence of such combination, and if intended and acted upon by the parties to unlawfully restrict trade at a certain point, the fact that the point was left blank in the contract itself did not affect their liability.

Appeal from the District Court of McLennan County. Tried below before Hon. Marshall Surratt.

*Pat M. Neff* and *S. R. Scott*, for appellant.—A contract which, if entered into within the State of Texas, and to be performed in the State of Texas is in violation of the anti-trust laws of Texas, though in fact entered into in another State, but to be performed and in fact carried out and performed within the State of Texas, is not protected from the provisions of the anti-trust laws of Texas by any provisions of the Constitution of the United States, nor by reason of the fact that it relates in any way to an interstate transaction. Acts of 1903, p. 119; Crump v. Ligon, 37 Texas Civ. App., 172.

*Allen D. Sanford* and *Etheridge & McCormick,* for appellee.—This is a penal action, and the State must bring itself squarely within the statute.  Schloss v. Railway Co., 85 Texas, 601.

The entire transaction, as is affirmatively disclosed by the pleadings of appellant, constituted interstate commerce, and as such was protected by article 1, section 8, clause 3, of the Constitution of the United States, and same did not, therefore, offend against the anti-trust laws of the State of Texas.  Albertyte Co. v. Gust Feist Co., 102 Texas, 219.

The stipulation in the contract which, because of its supposed violation of the law, was made the basis of this suit, was entirely incomplete, and there existed no exclusive contract between appellee and the Bomar Hardware & Buggy Company.  Morris v. Bank, 67 Texas, 602; Atkins v. V. B. School Township, 77 Ind., 447; Pepper v. Harris, 73 N. C., 365.

JENKINS, ASSOCIATE JUSTICE.—This is a suit in behalf of the State of Texas, brought by the county attorney of McLennan County to recover the penalty provided by statute for the violation of the anti-trust law of 1903.  There were originally two suits, one alleging a contract of July 30, 1904, in violation of said statute, and one of December 19, 1904, to the same effect.  Said suits were consolidated and tried as one.  The appellant filed two trial amendments, after which the court sustained a general demurrer to the petition, and the appellant declining further to amend, judgment was rendered for the appellee, from which judgment this appeal is prosecuted.  Such being the case, the issue is, did the petition, when taken together with the trial amendments, state a cause of action as against a general demurrer?

The petition, as amended, contained, substantially, the following allegations:

1.  The authority of the county attorney to institute and prosecute this suit.

2.  That the appellee, which will hereafter be referred to as the Racine Co., at the times the contracts, subsequently alleged, were made, and prior thereto, was engaged in the business of selling at wholesale in the State of Texas, including Waco, Texas, farming implements, buggies, etc.  It was also alleged that said Racine Co. was a manufacturer of such articles, and had a permit to do business in Texas and had an office at Dallas, Texas.

3.  That at said dates and prior thereto, the Bomar Hardware and Buggy Company, which will hereafter be referred to as the Waco Company, was engaged in the hardware and implement business at Waco, Texas, selling articles of the kinds referred to in said contracts to the people of that city and vicinity, where there was a market for such articles, and where many citizens were engaged in the sale and purchase of such articles.  That the Racine Company and the Waco Company, on July 30, 1904, entered into a contract whereby the Racine Company sold to the Waco Company certain farm implements, etc., and agreed to sell to said Waco Company thereafter as ordered, such im-

plements as shown by their catalogue made a part of said contract, at the prices and upon terms therein named, to be shipped from Springfield, Illinois, to Waco, Texas, there to be distributed among and to become a part of the stock of said Waco Company to be by it sold at retail; and that it was known by said Racine Company and intended by them, that this should be done; that it was further provided in said contract that the Racine Company would not sell any of its said goods to anyone else at Waco, Texas, and that the Waco Company would not buy goods of like character from anyone else during the continuance of said contracts, towit: from said July 3, 1904, to July 31, 1905, and that said parties entered into a like contract with each other on December 19, 1904, to remain in effect to July 1, 1905.

Said contract is attached as an exhibit to said petition, and the goods mentioned therein include plows, harrows, stalk cutters, listers, middle breakers, corn and cotton planters, cultivators, wagons, drills, hay tools, and plow shares. Said contracts also contain the following clause: "The Racine-Sattley Company agrees to give the party of the second part the exclusive sale of the goods of the class herein ordered in ——— for the season ending July 1, 1905. And the said second party hereby agrees not to buy or sell any other makes of like goods for the same period." Both contracts were alike in all respects, except as to the dates. The petition alleges that though this blank was left in the written contract that it was intended and agreed by both of said parties that said contract was to be performed and carried out at Waco, Texas, and that it was so carried out at Waco, Texas, in pursuance of said agreement and contract.

4. That it was the intention of both parties to said contract that it should be carried out and have effect in Waco, Texas; and to affect the market at Waco, Texas, and that if said articles were interstate traffic when shipped they lost such character when received at Waco, Texas, and the original packages were broken and mixed with the retail stock of the Waco Company and by it sold at retail, and that it was the purpose and intent of the Racine Company that this should be done.

5. That said contracts were in violation of the anti-trust laws of this State in that,

(a) They are exclusive in character and constitute a conspiracy in restraint of trade.

(b) They prevented and lessened competition.

(c) They created and tended to create a restriction in trade.

(d) They created a trust and combination, prohibited by law.

(e) They created and carried out a restriction in the free pursuit of business by each of said parties.

(f) They regulated and limited the output in said articles.

(g) They destroyed all competition in said articles. By either direct averment or by fair intendment, all of such purposes and effects of said contract are alleged to relate to the market at Waco, Texas.

6. That one of said contracts and all negotiations leading up to the same, was made at Racine, Wisconsin, and that the other was signed

at Waco, Texas, by the Waco Company and the salesman of the Racine Company, subject to the approval of the Racine Company, and that the same was afterwards approved by said Racine Company at Racine, Wisconsin.

The court did not file its conclusions of law, and we are not advised, except inferentially from the propositions discussed by counsel in their briefs, upon what ground the court sustained the demurrer.

I.   The demurrer for the purposes thereof admits the truth of the facts alleged in the petition.   In testing the sufficiency of the petition on general remurrer, we must indulge in its favor every reasonable intendment arising from the allegations therein.   Wiggins v. Bisso, 92 Texas, 219, 47 S. W., 638; Comer v. Burton Lingo Co., 24 Texas Civ. App., 251, 58 S. W., 970; State v. Missouri, K. & T. Ry. Co., 99 Texas, 516, 9 S. W., 220; Raleigh v. Cook, 60 Texas, 441; San Antonio Gas Co. v. State, 22 Texas Civ. App., 118, 54 S. W., 291.   Upon the authority of the cases above cited and upon those hereinafter referred to, we are of the opinion that, aside from the issue of interstate commerce, and the blank left in said contract, which are the only propositions referred to in the briefs herein, the petition states a good cause of action, upon a general demurrer and we see no reason why it is not good, even on special demurrer.   It undertakes to allege a conspiracy between the parties therein named to do, and that they did, the acts therein named, with the corrupt purpose and intent to effect that which is forbidden by the laws of this State; and while in civil actions great latitude is allowed in setting out the particular acts from which a conspiracy is to be inferred, the petition in this case sets out specifically the acts complained of, viz: the making and carrying into effect the exclusive contract of purchase and sale of the articles mentioned.   Such articles being of prime necessity to the mass of the people, an exclusive contract in reference to the sale and purchase thereof, if made and carried out in a manner to injuriously affect the people of Waco and that vicinity, would have been indictable at common law.   But our anti-trust statute has materially enlarged the doctrine of the common law as to monopolies and combines.

Under our statute the effect on the public of an agreement which is against public policy is not essential; the *tendency* is enough to bring it within the condemnation of the law.   Anheuser-Busch Brewing Assn. v. Houck, 27 S. W., 696; San Antonio Gas Co. v. State, 22 Texas Civ. App., 118, 54 S. W., 293.   In view of our anti-trust statutes and the decisions thereon, it can not be doubted that it is the settled policy of this State to prevent restrictions in trade.   "The law did not intend to regulate restrictions in trade, but to prohibit them entirely, without regard to their immediate effect on trade."   Comer v. Burton Lingo Co., 24 Texas Civ. App., 251, 58 S. W., 970.   Our anti-trust statute, among other things, prohibits conspiracies in restraint of trade.   A conspiracy is a combination between two or more persons to do an unlawful act, or to do a lawful thing in an unlawful manner.   The statute declares, among other things, that "the following acts shall

constitute a conspiracy in restraint of trade: Where two or more persons, firms, corporations or association of persons who are engaged in buying or selling any article of merchandise, produce or other commodity, enter into an agreement or understanding to refuse to buy from or sell to any other person, firm, corporation or association of persons any article of merchandise, produce or commodity." Again the statute declares: "That a trust is a combination of capital, skill or acts by two or more persons, firms, corporations or association of persons for either, any or all of the following purposes: To create, or which may tend to create or carry out restrictions in trade . . . or to create or carry out restrictions in the free pursuit of any business authorized or permitted by law. 3. To prevent or lessen competition in the . . . sale or purchase of merchandise. 5. To make, enter into, maintain or carry out any contract, obligation or agreement . . . by which they shall, in any manner, affect or maintain the price of any commodity . . . between themselves and others, to preclude a free and unrestricted competition among themselves or others in the State . . . of any commodity." Acts of 1903, pp. 119-121.

Had there been no decisions upon this subject, we should certainly think that the acts alleged in the petition herein violated this statute; in the light of the decisions, we think there can be no doubt of it. Texas Brewing Co. v. Templeman, 90 Texas, 277, 38 S. W., 27; Fugua v. Pabst Brewing Co., 90 Texas, 298, 38 S. W., 29; Texas Brewing Co. v. Anderson, 40 S. W., 738-739; Texas Brewing Co. v. Durrum, 46 S. W., 880; Wiggins v. Bisso, 92 Texas, 219, 47 S. W., 638; San Antonio Gas Co. v. State, 22 Texas Civ. App., 118, 54 S. W., 291; Pasteur Vaccine Co. v. Burkley, 22 Texas Civ. App., 232, 54 S. W., 805; Troy Buggy Works Co. v. Fife and Miller, 74 S. W., 957; Simmons & Co. v. Terry, 79 S. W., 1103; Waters-Pierce Oil Co. v. State, 48 Texas Civ. App., 162, 106 S. W., 918; Waters-Pierce Oil Co. v. State, 177 U. S., 28; State v. Missouri, K. & T. Ry. Co., 99 Texas, 516, 91 S. W., 214; Standard Oil Co. v. State, 117 Tenn., 618, 100 S. W., 714-715; Hastings Industrial Co. v. Baxter, 125 Mo. App., 494, 102 S. W., 1076-1077; State v. Standard Oil Co., 218 Mo., 1, 116 S. W., 1004 and 1009.

II. It is contended that the demurrer should have been sustained because the contract is alleged to have been made in the State of Wisconsin, that the goods were to be shipped from appellee's factory at Springfield, Illinois, to Waco, Texas, and therefore, related to interstate commerce.

It is true that the purchase of goods in one State to be shipped into another is interstate commerce, and therefore not within the provisions of the anti-trust laws of this State. But we do not think that it appears from the petition that the sales, except the first one, were contemplated to be made under said contract in another State. The petition alleges that the Waco Company was doing business at Waco, Texas, where it would naturally be inferred, nothing appearing to the contrary, it would make its purchases. We are not to shut our eyes to such facts incident to commerce as are known to all men, among which is that

wholesale dealers ordinarily make sales to their customers in this State by sending their traveling salesmen to their customers' place of business. The reason why the first sale can not be said to have been made at Waco is that it was made subject to the approval of the Racine Company, at Racine, Wisconsin; but it is apparent that the reason for this is that the first sale was made on condition of the approval by the Racine Company of the exclusive contract with the Waco Company. Having thus secured a satisfactory customer for a stated time, it is reasonable to infer that future sales were intended to be made in the ordinary manner, and if so, they would be made at Waco, Texas. It is alleged that the Racine Company had traveling salesmen soliciting and doing business throughout the State of Texas, and in McLennan County, Texas, and one of the contracts was signed by one of its salesmen. It is the business of a salesman to make sales, and it is not to be inferred that salesmen are traveling in Texas for the purpose of making sales in Wisconsin. It is alleged that the Racine Company was doing business in Texas, and in McLennan County, and that it had an office in Dallas, Texas, in charge of its agent and representative. It is alleged that its business was the wholesale of buggies, plows, farming implements, etc. We think that the petition sufficiently alleges, as against a general demurrer, that it was the purpose of the Racine Company to sell goods under said contract at Waco, Texas, and that it was its purpose and intent that said contract should be and was carried into effect in Waco, Texas.

III. It plainly appears that it was the purpose and intent of the Waco Company that it should and did carry out its part of said contract in Waco, Texas. The petition alleges a conspiracy between the parties to said contract, and the facts alleged constitute a conspiracy. If we are correct in holding that the agreement alleged in the petition was in violation of the laws of the State, if the same was intended to be, or was carried into effect in this State, then we have a conspiracy, a necessary part of which was to be, and in fact was, carried into effect by the Waco Company at Waco, Texas. But, says appellee, all of the acts done or contemplated to be done by it were to sell and ship goods, and these acts were to be performed outside of the State. As above stated, we do not so construe the contract, but, for the sake of argument, grant the correctness of this contention, still the Racine Company is no less guilty doing these unlawful acts in Texas, for the reason that the acts of its co-conspirator, the Waco Company, are, in law, its acts.

"If two persons pursue by their acts the same object, by the same means, one performing one part of the act and the other another part of the act, so as to complete it, with a view to the attaining of the object which they were pursuing, this will be sufficient to constitute a conspiracy." Cyc., vol. 8, p. 622. "It is sufficient if the evidence shows (in this case if the petition alleges) that they performed different parts." Hudson v. State, 43 Texas Cr., 420, 66 S. W., 670. The act of a co-conspirator, done in furtherance of the common design, is

the act of all. San Antonio Gas Co. v. State, 22 Texas Civ. App., 118, 54 S. W., 292; Raleigh v. Cook, 60 Texas, 441; Standard Oil Co. v. State, 117 Tenn., 618, 100 S. W., 719; 8 Cyc., 641, 657, though executed at a remote distance from the other conspirators." 8 Cyc., 683. "Co-conspirators are joint tort feasors. 8 Cyc., 847-848. "An offense is deemed to have been committed where any overt act in pursuance of the unlawful combination is performed by any one of the co-conspirators." Raleigh v. Cook, 60 Texas, 441; 8 Cyc., 687. Co-conspirators are responsible for the acts of each other, for the same reason that a principal is responsible for the authorized acts of his agent. *"Facet per alium, facet per se."* Waters-Pierce Oil Co. v. State, 19 Texas Civ. App., 1, 44 S. W., 946. Where an agreement, in violation of the anti-trust law, has been made, and one party pursues the course of conduct agreed on, the law will presume that the acts by him were the result of the agreement, and will hold all who entered into such agreement as instigators, aiders and abettors to the act and therefore responsible for the acts of each and all. State v. Live Stock Exchange, 211 Mo., 181, 109 S. W., 677.

IV. But aside from the law as to co-conspirators and the matter discussed in subdivision No. II of this opinion, does the petition show an interstate transaction? We think not. It alleges that the goods sold and contemplated to be sold under said contract were to be shipped from Springfield, Illinois, to Waco, Texas, there to be mixed and mingled with other goods of the Waco Company, and to become a part of its stock to be there sold at retail, and that said contract was made with the knowledge, purpose and intent on the part of the Racine Company that this should be done. This same contention as to interstate commerce was made in the case of Waters-Pierce Oil Co. v. State, 48 Texas Civ. App., 162, 106 S. W., 918. The Supreme Court of the United States (Waters-Pierce Oil Co. v. State, 212 U. S., 99, 53 L. Ed., p. 425 et seq.), quotes with approval the charge of the learned trial judge on this subject, as follows: "Oils and other products of petroleum, and goods, wares and merchandise of any character which the defendant or its agent may have purchased or acquired in any manner outside of the State of Texas, and caused to be transported to its agents or others within the State, are subjects of interstate commerce, when they enter this State, and so remain until such commodities are removed from the original tanks, vessels and other packages in which they are imported into the State, and become mixed with the common mass of property of similar character in this State. But . . . oil or other commodities purchased by defendant at points outside of the State, and transported into the State and removed from the original packages or vessels in which it was brought into the State, and mingled with property of similar character in the State, is not the subject of interstate commerce, but, on the contrary, is the subject of local commerce, and any agreement, or pool or arrangement entered into by the defendant with reference to such property, or the sale thereof, if any such sale there was, would be unlawful, if in violation of the anti-trust

laws of this State." In the case of Waters-Pierce Oil Co. v. State, 19 Texas Civ. App., 1, 44 S. W., 938, the same learned judge charged the jury, among other things, as follows: "You are further instructed that even though the contract may have reference to interstate shipments of oils, yet if the parties go further and contract that such oils, after being sold by said Waters-Pierce Oil Company to parties in this State shall be sold by said parties at a price to be fixed by the .duly authorized agents of defendant company, then you are informed that such dealing with said oils, after its sale to parties in this State, is not protected by the interstate commerce laws, but such contracts if made, are subject to the laws of this State." The same result would follow if said contract, in being carried out in this State, would violate any other provision of the anti-trust laws of Texas. This charge was approved by this court and a writ of error was denied by the Supreme Court of this State. In Standard Oil Co. v. State, 117 Tenn., 618, 100 S. W. (Tenn.), 711, it was held that articles imported into the State and commingled with the common mass of property in the State, were no longer articles of interstate commerce. As was said by the Supreme Court of Tennessee in the case above referred to: ."If it were otherwise, neither the Federal nor the State laws could be enforced in any case." This is obviously true, except as to contracts made and carried out wholly within the borders of a single State. If such is the case then indeed have the anti-trust laws bound the octopus with a rope of sand, and predatory and oppressive combines, like Job's war horse, can say, "Ha! Ha!"

For additional decisions on the issue of interstate commerce, see Fuqua v. Pabst Brewing Co., 90 Texas, 298, 38 S. W., 30; State v. Standard Oil Co., 218 Mo., 1, 116 S. W., 1046.

V. Appellee's third counter proposition is as follows: "The stipulation in the contract which, because of its supposed violation of the law, was made the basis of this suit was entirely incomplete, and there exists no exclusive contract between appellee and the Bomar Hardware & Buggy Company."

We presume that this assignment is based on the proposition that a patent ambiguity can not be aided by oral evidence. Such is the law, and in such case, if the written instrument does not evidence a contract without the aid of oral evidence, it can not be enforced. Such is the effect of the decisions cited by appellee, viz: Morris v. Bank of Commerce, 67 Texas, 602; Pepper v. Harris, 73 N. C., 365; Atkins v. School Trustees, 77 Ind., 447. In the Indiana case, suit was brought on a written contract for the employment of a school teacher for the scholastic year, the trustees having refused to employ the teacher under said contract. The written contract provided that the teacher should be paid at the rate of $4.50 per day for the term of —— weeks, and for his services should be paid the sum of —— "the same being the amount of wages agreed upon." The court held that while the same might be treated as an employment for an indefinite term, entitling the party to nominal damages for the breach of same, yet as the blanks

in said contract were left, not by mistake, but intentionally, for the reason that the parties did not know, when the same was made, what would be the length of the scholastic term, and as there was no averment that the blanks should be filled when such fact should be ascertained, it could not form the basis of a suit to recover a definite amount for a definite term. The North Carolina case was a suit upon a written contract, in which A promised to pay B —— dollars upon conditions precedent, stated in said contract. Held, that as said contract was unintelligible without the aid of oral testimony, no recovery could be had upon the same. The Texas case was a suit upon a note signed by several parties, in which there was a clause authorizing any attorney, in case of default, to waive process, accept service and confess judgment against —— for the amount of the note, interest and ten per cent attorney's fees. Under the supposed authority, an attorney appeared, accepted service and confessed judgment for the interest, principal and attorney's fees against all of the makers of the note. Held, that he was not authorized to do so. These cases are but applications of the well established rule of law as to patent ambiguities, above stated.

But there is another rule of law, and that is, if there be a patent ambiguity in one clause of a contract which renders it void for uncertainty, the nullity of such clause will not affect the remainder of the instrument, if there be enough left to constitute a complete contract. For example, in the Texas case, supra, the void clause as to confessing judgment, did not render the note void, it being a complete contract without said clause. If this rule be applied to this case it is at least doubtful if the appellee would be benefited by said clause being treated as null and void. Without filling said blank, and treating the word "in" as surplusage, the instrument would show an exclusive contract for the sale of said goods everywhere for the season ending July 1, 1905. However, it is not necessary for us to so hold, and we do not pass upon this point. Again, in the Texas case, supra, Chief Justice Willie said that if it was absolutely necessary to fill the blank with the names of all of the makers of the note in order to give effect to the power conferred, there might be some reason for so doing. Perhaps, if it was necessary to decide the point in this case, it might well be said in view of the allegations, that the goods were to be shipped to Waco, Texas, where the Waco Company was in business, there to be mixed and mingled with their stock of goods of like character, and to be sold by them at retail, that the blank in said contract could not be consistently filled with any words except "Waco, Texas."

But we rest our decision upon another point; and that is, that *this is not a suit upon a contract* in which judgment is asked for the enforcement of such contract, or for damages on account of the breach of the same, as in the cases cited by appellee. This is a suit to recover a penalty on account of an alleged illegal agreement made and acted upon by the parties thereto. The written contract is but evidence tending to support the charge made by the petition, and it is wholly immaterial that it does not support the entire charge. If the written con-

tract as plead would have tended to support any material part of the State's case, it would have been admissible in evidence on a trial of this cause. By way of illustration, suppose the charge was murder, and the defendant is alleged to be a co-conspirator with another party who did the killing. Upon the trial the State offers in evidence a letter written by the defendant to the murderer in which he stated that he will furnish arms, or otherwise aid the murderer in killing ———— at a certain time, the same being on or about the time the murder was committed, and in connection therewith the State offers to prove, by oral evidence, that the party referred to in said blank was the deceased, would not such letter be admissible in evidence? Undoubtedly so. And it would be equally admissible if, instead of being a letter, it was a written contract in which the defendant agreed for a valuable consideration, to furnish such aid, though, if a contract of this nature was enforcible at law, it would be void for uncertainty and, therefore, would be subject to general demurrer in a suit to recover the consideration therein agreed upon.

For the reasons hereinabove set out we think the court erred in sustaining the general demurrer to appellant's petition, and so holding, we reverse and remand this case.

*Reversed and remanded.*