PHILANDER PERRIN *v.* CORNELIUS RUSSELL, *and Trustee* WIL-LIAM PERRIN, *and Claimant* GEORGE CROCKER.

*Trustee process.    Attachment of a reversionary interest in a promissory note.*

If one execute a note to A., payable to A. or bearer, knowing that it is given for property belonging to B., sold by A, as his agent, and that it is taken by A. for B's benefit, and is immediately to be assigned to a third party, having a claim against A., upon which B. is liable as surety, to be held by such third person, for the benefit of B., as collateral security for the former's claim; and it is so transferred and notice thereof given to the maker, and if B. subsequently pay the claim of such third person, and receive the note from him, it cannot be trusteed by the creditors of A.

The payee's interest in a promissory note, which he has transferred to a third person, as collateral security for a demand less than the note, due notice of such transfer having been given to the maker, may still be attached by the trustee process against the maker, by the plaintiff's bringing into court for the benefit of the claimant the amount of his claim and costs.

TRUSTEE PROCESS.   The cause was tried by the court upon the disclosure of the trustee and the claimant's declaration, at the June term, 1859,—BARRETT, J., presiding.

It appeared that this process was served upon the trustee on the 29th of December, 1856; that at some period previous thereto the defendant, Russell, had borrowed of one Davis three hundred

dollars, and had given his note to him therefor signed also by the claimant, Crocker, as his surety ; that subsequently Russell delivered to Crocker two pairs of horses, one pair of harnesses and a wagon to be held and disposed of by him as security for having signed this note as Russell's surety : that shortly afterwards the trustee had some negotiations with Crocker in regard to the purchase of one pair of these horses, and that the trustee being desirous to see Russell drive the horses, on the next day Crocker procured Russell to drive them to the trustee's house, and told him to sell them to the trustee ; that on that day, being the 27th of December, 1856, Russell sold one pair of the horses and the harnesses to the trustee for two hundred and seventy-five dollars, of which fifty-two dollars was to be paid to Russell in certain personal property, and for the balance the trustee gave Russell his note of that date, payable to Russell, or bearer, on or before the 10th day of April following ; that the trustee at the time of this sale knew the purpose for which Crooker held the horses, and also was aware that the sale was made by Russell in Crocker's behalf; that this note of the trustee was on the day of its date delivered by Russell to Crocker, and immediately passed by the latter to Davis as collateral security for the note held by him against Russell and Crocker, and that on the same day the trustee was notified by both Crocker and Russell, at the request of Davis, of such transfer to the latter ; that the trustee knew when he gave the note that it was to be transferred to Davis for Crocker's benefit ; that subsequently Crocker paid the three hundred dollar note to Davis and received from him the note signed by the trustee, and continued to hold it up to the time of trial; and that the other personal property turned out by Russell to Crocker was worth two hundred dollars, and had been disposed of by Crocker for that sum.

Upon these facts the county court held that the claimant was entitled to hold the note given to Russell by the trustee, and adjudged the trustee chargeable only for the personal property which he had agreed to pay to Russell as part of the price of the horses purchased by him.

To this judgment the plaintiff excepted.

*C. W. Clarke*, for the plaintiff.

*William Hebard*, for the defendant.

KELLOGG, J.   The questions in this case arise upon exceptions taken by the plaintiff to the decision of the county court in favor of the claimant on his declaration of claim to the funds in the hands of the trustee.

The bill of exceptions shows that on the 27th of December, 1856, the trustee purchased of the principal defendant, Russell, a span of horses and a set of harnesses for an agreed price, towards the payment of which he was to deliver to Russell certain articles of personal property, and that for the balance of the price, amounting to two hundred and twenty-three dollars, he executed and delivered to Russell a promissory note payable to him or bearer, on or before the 10th day of April then next. This note is the subject matter of the litigation between the plaintiff and the claimant in this case.

Previous to this purchase, Russell had borrowed of one Davis three hundred dollars, and had given him a note therefor, which the claimant had signed as his surety ; and Russell had transferred to the claimant certain property, including the same property which the trustee purchased, and for which he gave his note as before mentioned, to hold and dispose of as security for signing said note to Davis.

The facts stated in the bill of exceptions establish beyond any question that the property for which the trustee gave his note to Russell had, previous to the time of the execution of that note, been transferred by Russell to the claimant under such circumstances and conditions as made the transfer effectual to protect the rights of the claimant in the same against the creditors of Russell, and that at the time of the sale, the trustee had full information from the claimant respecting his title to the property, and the purpose for which it was held, as well as that the principal defendant acted on behalf of the claimant in making the sale. The trustee also then knew that it was expected and intended by both Russell and the claimant that this note was to be transferred to Davis, for the benefit of the claimant ; and it was on the same

day of its execution transferred by Russell to the claimant, and by the claimant to Davis, to be held by Davis as collateral security for the payment by Russell of the note which he and the claimant had executed to Davis. The trustee was on the same day notified, at the request of Davis, both by the claimant and Russell, that Davis so held his (the trustee's) note. That this notice was sufficient to protect the interest of Davis in the note from attachment by trustee process against any former holder, was settled in the recent cases of *Webster* v. *Moranville et al.*, 30 Vt. 701, and *Brickett & Denison* v. *Nichols et al.*, Ib. 743. The claimant subsequently paid to Davis the amount due on the note so signed by Russell and the claimant, and received from Davis the note so executed by said trustee, and has ever since held the same ; and it appeared that the claimant had received from the proceeds or avails of the other property which was transferred to him by Russell as above mentioned, the sum of two hundred and seventy dollars which should be applied towards the amount paid by the claimant on the note to Davis.

It is clear that, as the claimant was entitled to hold the property which was transferred to him by Russell, for his security against liability on the Davis note, by a right superior to that of any creditor of Russell, and as his interest in the property was known to the trustee at the time he purchased it, the right of the claimant to hold the note of the trustee, which was executed on the purchase of a part of the property in part payment for the same, must be regarded as superior to any right or interest in the note which could be acquired by a creditor of Russell under the trustee process. But the right of the claimant to hold the note of the trustee is contingent and defeasible, and whenever the claimant is fully indemnified for the amount paid by him on the note to Davis, his interest in the note of the trustee will cease, and that note will then become subject to the trustee process as the absolute property of the principal defendant. The debt of the trustee is due from him absolutely, and without depending on any contingency. It is the duty of the court to protect the right of the claimant to the full extent of his claim for indemnity, but whenever he is completely indemnified by the payment of the balance remaining due to him on account of the note to Davis,

he will then cease to have any claim on the trustee's note. We think, therefore, that if the plaintiff should bring into court, for the use of the claimant, the amount remaining due to him on account of the Davis note, after deducting the sum already received by him to be applied thereon, together with his costs to be agreed upon or taxed, the plaintiff would then be entitled to hold the trustee chargeable in this suit for the amount of his note to the principal defendant. The claimant being thus furnished with an indemnity in money to the full extent of his claim or lien upon the credits in the hands of the trustee, would have no reason to complain that his rights had not been fully recognized and protected ; and we concur in the opinion that a creditor of the principal defendant ought, under such circumstances, to be permitted, in this or some other manner, to satisfy and remove the claim or lien of the claimant upon the credits of the principal defendants in the hands of the trustee, if he should desire to do so. The act of 1858, in relation to the attachment of a reversionary interest in personal property, (Acts of 1858, No. 8, p. 15,) is a recognition of such an equity or right of the creditor in relation to the personal property of his debtor in possession, and we think that the equity of that statute is equally applicable to property in action as well as to property in possession ; and especially so in case of an attachment by trustee process, in which rights and credits, as well as goods and chattels, are attached.

In accordance with the views which we have expressed, the judgment of the county court is reversed *pro forma*, and if the bill of exceptions furnished the means of ascertaining the exact amount of the balance now due to the claimant on account of the Davis note, we should, on the application of the plaintiff, by a rule of this court, allow him to bring into court, for the use of the claimant, the amount of such balance, together with the claimant's costs, and after such payment into court, render judgment that the trustee is chargeable in this suit for the amount of his note to the principal defendant with the interest thereon. Unless the plaintiff and claimant should otherwise agree respecting the judgment to be entered in this court, the cause will be remanded to the county court for further proceedings in that

court in conformity with the views above expressed, respecting the relative rights of the plaintiff and the claimant to the credits in the hands of the trustee.

Judgment in favor of the claimant reversed *pro forma*, and the cause remanded to the county court for further proceedings.