HORTON SARGENT *v.* WILLIAM F. WOOD ; EPHRAIM PIERCE AND PHILANDER PERRIN, TRUSTEES.*

*Attachment by Trustee Process of Negotiable Paper Transferred to a Bank. Gen. Sts. c. 34, s. 47.*

Negotiable paper transferred to a bank as collateral security, is exempt from attachment by trustee process under s. 47, c. 34, Gen. Sts., only so far as necessary for the security of the bank. Thus; where the payee of a promissory note transferred it to a bank before it was due, as collateral security for the payment of his own note for a less sum, and the bank gave the maker notice thereof, and the payee's creditor brought suit against him and summoned the maker as trustee, and the maker afterwards, when the note fell due, caused the sum due thereon to be paid to the bank and the note to be taken up, it was *held*, that the maker was chargeable for the difference between the sum due on his note and the sum due on the note to which it was collateral.

TRUSTEE PROCESS. It appeared from the disclosures of the trustees that on September 30, 1876, the trustee Pierce gave to the defendant his promissory note of that date for $500, payable to the defendant, or order, on or before April 1, 1877, with interest after that date. By contract of the same date said note was made subject to a deduction of $58.42 at maturity, and Pierce claimed that by another stipulation of the contract the note was subject to a still further deduction of $22, and no question was made but that that further sum should be allowed, if Pierce was to be held as trustee. At some time not long after-

* Decided at the March Term, 1878.

wards, the defendant delivered the note to the Randolph National Bank as collateral security; for his note for $225. On or about December 19, Pierce received notice from the bank that it held the note as collateral security, but the notice did not state for what it was held as collateral, and Pierce did not know until some time in March, when he was informed thereof by the defendant. Shortly before the service of process on the trustees, and not long before Pierce's note fell due, Pierce, who resided in Northfield, went to the trustee Perrin, who resided in Randolph, near said bank, and told him of his note, and of its being held as collateral as aforesaid, and that the defendant said he wished to pay his own note and have Pierce pay to him instead of to the bank. Pierce wished to go home, and could not wait for defendant to arrange the matter, and thereupon put $441.58 into Perrin's hands, with instructions to pay the same to the holder of the note before maturity. Perrin waited until a day or two before the note fell due, process having been served on him and on Pierce in the meantime, and seeing no prospect of payment of the principal obligation by the defendant, paid said sum to the bank and took up Pierce's note as his friend or attorney, neither charging nor receiving anything for his trouble therein.

At the June Term, 1877, the court, POWERS, J., presiding, adjudged the trustees not chargeable, and that they be discharged, with costs; to which the plaintiff excepted.

*E. J. McWain* and *C. W. Clarke*, for the plaintiff.

The reversionary interest in a note pledged as security may be attached by trustee process. *Perrin* v. *Russell*, 33 Vt. 44. That case was not based on the statute of 1858.

The property in the note was in the defendant, and the trustees should have paid the bank's interest therein. The excess was properly attachable. *Fay* v. *Swith*, 25 Vt. 610; *Downer* v. *Tarbell*, 32 Vt. 22.

If the trustees could pay to the bank after service of process, the excess belonging to the defendant could never be attached. Such a rule would enable a debtor to protect a large note by transferring it as collateral security for a small debt, and thereby put his property beyond the reach of his creditors.

*P. Perrin ( J. W. Rowell* with him) , for the trustees.

There is here no question of frand or collusion.   The bank had authority to enforce collection of the full amount of Pierce's note, and neither the debtor nor his creditors  could prevent its collection thereof, except by payment of the sum for payment of which it was held as security.   *Tarbell* v *Sturtevant,* 26 Vt. 513 ; *Griswold* v. *Davis,* 31 Vt. 390.

The trustee had a right to pay the  note to the party who held it and who could enforce payment thereof when due, and so save himself from costs of a suit.

The St. of 1841 made negotiable promissory notes trusteeable unless negotiated and notice given to the maker before service of process.   The St. of 1852 provided that negotiable paper actually assigned, negotiated, or transferred, before due, should be exempt from attachment by such process, if discounted at any bank in the State ; and *Bank* v. *Drury,* 35 Vt. 469, held, that the note must be *discounted,* to come within that provision, and that the taking of it as collateral would not protect it.   Section 47, c. 34, Gen. Sts., made such further change that it is now sufficient, to exempt a note from such process, that the note be " actually assigned, negotiated, and transferred to any bank in this State before it becomes due."   The object of the statute now in force undoubtedly is, to place commercial paper where it was at common law, and where it was from 1836 to 1841, as shown by *Hinsdell* v. *Safford,* 11 Vt. 309, and *Little* v. *Hale,* 11 Vt. 482.   This view is confirmed by *Hall* v. *Bowker,* 44 Vt. 77, and *National Bank of Newbury* v. *Webster,* 47 Vt. 43.

 . The opinion of the court was delivered by

Ross, J.   From the trustees' disclosures it appears that the trustee Pierce, September, 30, 1876, gave his promissory note to defendant Wood for $500, payable to Wood, or order, on or before April 1, 1877, with interest after that date.   This note, by a contract of the same date between Wood and Pierce, was subject to a deduction of $58.42 as of April 1, 1877, leaving due on it at maturity $441.58.   Pierce also claims a further deduction growing out of another stipulation of the same contract of $22.   No

question is made but that this sum should be allowed him if he is to be holden as the trustee of Wood. December 19, 1876, the trustee Pierce was duly notified that Wood had turned the note out, and Wood had in fact turned the note out, to the Randolph National Bank as collateral security. He subsequently learned that it was collateral security for the payment of Wood's note of $225. While this state of facts was existing, the trustee process was served on Pierce. Whatever Perrin had to do about the payment of the note subsequently, he did as the agent of Pierce, and we find nothing which shows that he should be holden as trustee, as he never held Wood's money, nor was indebted to Wood from anything arising out of this transaction. He must be discharged with costs. The question in the case is, whether Pierce, on this state of facts, can be holden trustee for the balance of the note above the deduction which he is entitled to have made, and the amount of Wood's note to the bank, for the payment of which Pierce's note was turned out as collateral security. The balance of Pierce's note above what was necessary to discharge Wood's note to the bank, the bank held for Wood. It was subject to attachment by the trustee process. *Fay* v. *Smith*, 25 Vt. 610, *Downer* v. *Tarbell*, 32 Vt. 22, *Perrin* v. *Russell*, 33 Vt. 44, unless taken from its operation by the first proviso to section 47, c. 34, Gen. Sts., which is, " Any negotiable paper which shall be actually assigned, negotiated, and transferred to any bank in this State before it becomes due, shall become exempt from attachment by the trustee process." The trustee claims that this proviso, under the decisions, *Hall* v. *Bowker*, 44 Vt. 77, *National Bank of Newbury* v. *Webster*, 47 Vt. 43, exempts the whole note absolutely from attachment by the trustee process, on the facts existing in the case at bar. In neither of the cases last cited was the question at bar raised or discussed. The purpose of the enactment of this proviso as explained in these cases was, to enable banks to deal freely in such paper while current, and without fear from loss from some pending trustee suit unbeknown to the bank. At the same time the language of the proviso requiring that the paper shall be *actually* assigned, &c., clearly indicates that the Legislature did not intend that the exemption created should be used to

cover up a debtor's property.   The object of the exemption will be fully accomplished if the banks, while dealing in such paper, are fully protected.   The second proviso allowing the *bona fides* of the assignment to be inquired into, and compelling the assignee to testify to the consideration upon which the sale or assignment was made, further indicates the scope which the Legislature intended should be given to the exemption.   From the nature of the trustee's obligation, Wood could not avail himself of it as a pledge, without parting with the possession of the note, and giving the bank the right to collect the whole of it.   But he did not actually assign to the bank by pledging it as collateral security for the payment of his note, only so much of it as was necessary to make that payment.   All received from the collateral note above what was necessary for the payment of Wood's note, the bank would receive and hold, not as its own money, but as the money of Wood.   Before the collection of the note, the bank held the surplus of the trustee's note above what was necessary to liquidate Wood's note to the bank, for Wood and as his property. While as between Wood and the bank, the bank had the right to receive the pay on the whole note, because Wood had made it his agent for that purpose, it may be questioned whether as against another creditor of Wood who had seized his interest in the note by process of law, it had that right.   So, too, the trustee had the right to pay the whole note to the bank, because of its agency for Wood, until the law seized it in his possession.   We think the general policy of the law which subjects all negotiable paper, whether under or overdue, to the operation of the trustee process, will be best subserved, and the proviso in favor of banks exempting it from that process when actually assigned, &c., while current, equally well subserved, by holding the trustee Pierce chargeable for so much of the note as he had not the right to deduct, and as was not required to satisfy its pledge to the bank.   The only hesitation we have had in coming to this result is, the fact that the bank has not been cited in as claimant of the note, so that it would be bound as well as the defendant and trustee Pierce by the adjudication.   Pierce might have had it cited in by moving the court for that purpose.   As the making of the bank party by

76

such citation is for the protection of Pierce, it is at his option to have the bank cited in or neglect it at his risk.

The *pro-forma* judgment of the County Court is reversed, and judgment rendered that trustee Pierce is chargeable for $194.58, with interest from April 1, 1877, and that trustee Perrin be discharged with costs.