R. J. SHURTLEFF *v.* I. A. NORCROSS AND TRUSTEE.

October Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, MILES, and SLACK, JJ.

Opinion filed November 1, 1921.

*Pledge of Notes Constituting Continuing Security for All In-*
*debtedness—Trustee Process—Exemption of Notes Trans-*
*ferred to Bank—Second Pledge of Notes in Hands of First*
*Pledgee—Further Delivery not Necessary—Only Principal*
*Can Complain That Agent Acted for Both Parties.*

1. A pledge of notes as general collateral for any and all of the pledgor's indebtedness to the pledgee, for all renewals of the same, and for all future indebtedness, direct or indirect, with power in the pledgee to apply the proceeds of the collateral wherever it might elect in the extinguishment of any part of such indebtedness, constituted a continuing security for all indebtedness to the pledgee created prior to the acquisition by some third person of an interest in the collateral inconsistent with such continuance.

2. G. L. 1938, exempting from attachment by trustee process, negotiable paper, actually assigned, negotiated, and transferred to a bank before due, affords such exemption only to the extent necessary for the protection of the bank holding the paper.

3. There may be a valid second pledge of a note in the possession of the first pledgee, subject to the first pledge, without further delivery of it. In such case, the possession of the first pledgee may be regarded as the possession of the second pledgee through the agency of the former, and particularly so where the first pledgee agrees to the second pledge.

4. If the fact that one acted as the agent for both parties, and was personally interested, in the giving and securing of a pledge is a ground for avoiding the contract, it is available only to the principals, or one of them, and not to an attaching creditor by trustee process of the pledgor.

ACTION OF CONTRACT. Judgment was rendered against the principal defendant at the June Term, 1915, Caledonia County,

*Miles,* J., presiding, and the case referred to a commissioner to take the disclosure of the trustee. Hearing on the commissioner's report at the June Term, 1919, *Stanton,* J., presiding. Judgment discharging the trustee. The plaintiff excepted. The opinion states the case.

*Dutton & Shepard* and *David E. Porter* for the plaintiff.

*R. W. Hulburd* and *John W. Redmond* for the trustee.

WATSON, C. J.   [1]   The trustee, Lamoille County Savings Bank and Trust Company, is a banking institution having its principal place of business at Hyde Park, this State.   The writ in this case was served upon it April 6, 1911.   For about four years prior thereto, the principal defendant borrowed money of the trustee for use in his business of purchasing and selling horses, carriages, and real estate, and, as collateral security for the payment of the money so borrowed, he turned over to the trustee, at various times, promissory notes taken by him in the course of his business.   By agreement between defendant and the trustee, dated November 27, 1908, the latter was authorized to treat all such notes as general collateral for any and all of defendant's then present indebtedness to the trustee, as well as for any renewals of same, and for all sums he might thereafter owe the trustee in any way, directly or indirectly, and to apply the proceeds of the collateral wherever it might elect in the extinguishment of any part of such indebtedness.   Thus the pledge was made, in broad terms, a continuing security for all indebtedness to the trustee, created prior to the acquisition, by some third person, of an interest in the collateral, inconsistent with such continuance.   Jones, Collateral Securities (3d ed.), § 361; *Buchanan* v. *International Bank,* 78 Ill. 500.

[2]   All notes so turned over by defendant, were taken by the trustee and came into its possession before due, for value, and in due course of business; and they were held by it as security in accordance with the agreement of November 27, 1908, and such of them as had not been paid were so held at the time of the service of the writ upon the trustee.   The latter says this brings the case within the provisions of G. L. 1938, exempting from attachment by trustee process, negotiable paper, actually assigned, negotiated, and transferred to a bank, in this State,

before it becomes due. Suffice it that the statute has been construed to afford such exemption only to the extent necessary for the protection of the bank holding the paper (*Sargent* v. *Wood*, 51 Vt. 597), and so it is not necessarily controlling in this case.

At the time of the service of the writ, defendant was indebted to the trustee, for borrowed money, to the amount of $4,225.04, with interest on the same from December 18, 1910, and the latter held, as security therefor, collateral paper, having a face value largely in excess of such indebtedness, on which it was making collections and reducing the debt. Thereafter continued collections were made upon the collateral and applied in the same manner; and if the trustee had not discounted defendant's note to C. McFarland & Son, hereinafter called the McFarland & Son note, and the note given by defendant to L. S. Robie, hereinafter called the Robie note, and afterwards paid them out of the proceeds of said collateral, there would have been in the hands of the trustee on June 15, 1915, after paying the indebtedness of defendant to it, the sum of $1,069.94, with accruing interest from that date. At the June Term, 1915, of the county court, judgment was rendered against the principal defendant for the sum of $1,323.27, damages and costs, which judgment has never been satisfied.

The indebtedness to the trustee, collections on collateral and reductions of the indebtedness, continued until June 10, 1915, at which time the indebtedness amounted to $1,164.83, which sum, at least, with interest thereon from that date, is still due.

Prior to July 21, 1909, defendant was indebted to Robie in the sum of $661.47. The latter was a dealer in grain and feed at Hardwick, doing his banking business with the Lamoille County National Bank at Hyde Park. Henry M. McFarland, at that time and for some time before, and continuously thereafter during all the time material to this case, was a director and vice-president of the trustee bank, and vice-president of the National Bank, and was the active manager, during all that time, of both banks. He was also an attorney at law and, as such, did a collection business.

On the 21st day of July, 1909, McFarland, as the representative of both banks, went to Hardwick and there met defendant and Robie. On the occasion of this meeting defendant executed and delivered his promissory note to Robie for the sum of $661.47, payable one day after date to the order of Robie, at

the trustee bank, with interest semiannually, etc.     The latter indorsed this note, making it payable to the order of that bank. The note so indorsed was transferred and delivered by Robie to the National Bank as collateral security for his indebtedness thereto.     At the time this note was executed and delivered, it was agreed by Robie and the defendant, and by McFarland for the two banks, that the collaterals deposited by defendant with and held by the trustee, should be security for the Robie note, and that that note should be paid out of such collaterals after the indebtedness to the trustee had been provided for.     The National Bank held the note until April 25, 1911, when, by direction of McFarland, the trustee paid to it the amount due thereon ($735.09), and took over the note.     The trustee has reimbursed itself for the amount so paid, from a part of the avails of defendant's collaterals held by it.

Before December 15, 1909, C. McFarland & Son, grain dealers at Hardwick, had a book account against defendant, amounting to $943.75, and had placed it in the hands of Henry M. McFarland, as their attorney, for collection.     Defendant wanted to pay this debt, but he had nothing with which to do so except the collaterals deposited with the trustee.     On the day last named Henry M. McFarland went to Hardwick and there met defendant and C. McFarland.     On this occasion defendant executed and delivered to C. McFarland & Son, in settlement of their account, his promissory note for $943.75, payable to their order, on demand, at the trustee bank, with interest semiannually, etc. This note was indorsed by the payees, waiving demand and notice.     At the time the note was executed and delivered, it was agreed between the maker and the payees, and by Henry M. McFarland for said bank, that the collaterals deposited by defendant with the bank, should also be security for the payment of the McFarland & Son note, and that that note should be paid out of the collaterals after the indebtedness to the bank had been provided for.     Henry M. McFarland then took possession of the note and held it under said agreement, as attorney for McFarland & Son, until the 24th day of April, 1911, at which time, deciding that the collaterals were sufficient so the trustee might safely take the note, he gave it to the treasurer and received from him the amount thereof ($1,022.73), and remitted the same, less charges for services as attorney, and a commission, to C. McFarland & Son.     The trustee has reimbursed itself for the amount so

paid, from a part of the avails of defendant's collaterals held by it.

[3]    The commissioner finds that the trustee's taking of the Robie note, and of the McFarland & Son note, at the times and in the manner stated above, was each in due course of business, for value, and in accordance with the agreement above set forth. In the view we take of the case, whether such taking was in due course of business need not be considered.    The agreement to which reference is there made by the commissioner, is the one entered into when each of these notes was executed and delivered, whereby defendant's collaterals deposited with the trustee were to cover and secure the note, and out of them it should be paid after provision had been made for his indebtedness to that bank. By that agreement defendant pledged the collaterals, already pledged to the trustee, to Robie as security for the payment of his note, in legal effect subject to the rights of the trustee therein; and, in like manner and subject to the same rights, defendant pledged the same collaterals to McFarland & Son, as security for the payment of their note.    While the general rule that delivery and possession are as essential to a valid pledge of negotiable paper as they are essential to a valid pledge of corporeal chattels, a delivery which vests the title and control of the paper in the pledgee is sufficient; and when, in the circumstances, an actual delivery is impossible, the pledge may rest on the agreement of the parties, accompanied by the possession of a third person. And so it is, says Mr. Jones, "a note already pledged and in the possession of the pledgee may be again pledged by the owner to another person, subject to the lien of the first pledge, without any further delivery of it.    The possession of the note by the first pledgee may be regarded as the possession of the second pledgee through the agency of the former."    Jones, Collateral Securities, (3d ed.), § 83; *In re Wiley,* 4 Biss. 171, Fed. Cas. No. 17,655; *Second National Bank* v. *Sproat,* 55 Minn. 14, 56 N. W. 254. And since the trustee, by its active manager, was present and agreed to the pledge made by defendant to Robie, and also to the pledge made by defendant to C. McFarland & Son, it amounted in law to a consent on its part to such agency in connection with the possession held by it, essential to the validity of its own security.    It follows that since the collaterals were held by the trustee, not only for its own security, but also for the security of the Robie note and the McFarland & Son note, all under

pledges legally existing before and at the time when plaintiff's writ was served upon the trustee, the right of the latter to apply the proceeds of the collateral in payment of those two notes in accordance with the provisions of the pledges securing them, cannot well be doubted.

[4]   It is urged by plaintiff that in the matters connected with the giving and securing, by pledge, the two notes just mentioned, Henry M. McFarland acted under a double agency, and that in the C. McFarland & Son transaction, he was also personally interested by virtue of his employment as attorney, to the extent of his charges and commission in collecting the debt due them from defendant. If this be so, only his principals or one of them could, by reason thereof, avoid the contracts, and neither of them has attempted to do so.   The plaintiff, as attaching creditor of defendant by trustee process, has no standing for such purpose. *United States Rolling Stock Co.* v. *Atlantic & Great W. R. R. Co.*, 34 Ohio St. 450, 32 A. R. 380; 21 R. C. L. 827; 2 C. J. 712, 713.

Since the record shows no goods, effects, or credits of the defendant in the hands or possession of the trustee at the time the writ was served upon it, nor afterwards before disclosure, for which it is in law chargeable as trustee, there was no error in the holding below.

*Judgment affirmed.*