Newton v. Mann.

No. 14,856.

Newton v. Huber.

(137 P. [2d] 776)

Mr. MAX P. ZALL, for plaintiff in error.

Messrs. SILVERSTEIN & SILVERSTEIN, for defendants in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

In separate actions in the district court the respective defendants in error, as plaintiffs, sued plaintiff in error, defendant below, upon two promissory notes for the principal amounts of some $15,000, held by plaintiffs individually and which they alleged were endorsed and payment guaranteed by defendant. As grounds for defense the answer of defendant pleaded: A general denial; that action on the notes was barred by the statute of limitations; that there was no consideration for his endorsement and guaranty, and that, with the knowledge of plaintiffs, the Texana Oil Company, the maker of such notes and not a party to these actions, had fraudulently obtained defendant's signature to the endorsement and guaranty. By stipulation the two cases were consolidated for trial, which was had before a jury and resulted in verdicts finding the issues joined in favor of plaintiffs and against defendant. Defendant here seeks a reversal of the judgments which followed.

■ ■ The ground therefor principally stressed by counsel for defendant in briefs and argument is that both causes of action were barred by the six-year statute of limitations of Colorado. Section 1, chapter 102, '35 C.S.A. The notes, payable in the State of Indiana, matured in 1931. The actions were commenced in Colorado in 1938 and 1940 respectively, in which state defendant has resided since 1936. Under an Indiana statute, section 295 Burns Anno. Stat., Revision of 1908, the period of limitation on promissory notes is ten years, which had not elapsed when the suits were brought in Colorado. These facts bring the case at bar squarely within the purview of our adjudication in *Simon v. Wilnes,* 97 Colo. 78, 47 P. (2d) 406, wherein it was held, by a divided court, that an action commenced in Colorado in 1932 on a note executed and payable in Nebraska in 1922, was not barred by the six-year statute of Colorado where, by reason of the maker absenting himself from Ne-

braska, the cause of action was not barred in that state at the time suit was commenced in Colorado wherein the maker then had resided less than six years. Counsel for defendant frankly concedes that this decision is against him but contends, as he attempts to demonstrate by cases from other jurisdictions, "That the Simon-Wilnes case should be overruled * * * and that the dissenting opinion * * * should be adopted as the correct opinion of this court on the question of the statute of limitations." In view of this contention we think it not inappropriate to quote as follows from the opinion in *Murray v. Newmyer*, 66 Colo. 459, 461, 182 Pac. 888: "A dissenting opinion shows that the case has been thoroughly considered. The opinions of the majority govern. When that question arises in future cases, the dissenting justice is as much bound by the decision of the majority as is the justice who wrote the prevailing opinion. * * * Admitting the excellence of the dissenting opinion in the * * * [previous] case we see no reason to disturb the authority." The Simon-Wilnes decision was announced in 1935. Since that time no legislative changes have been made in the statutes therein construed. In these circumstances it must be considered that the decision has established a settled rule of construction and policy in this jurisdiction and so is stare decisis upon the question herein involved.

It next is urged, although it is debatable whether the pleadings so permit, that plaintiffs may not recover on the notes involved because, as defendant contends, one J. E. Bauer, vice-president of the Texana Company, the maker of the notes, admittedly the agent for the company and allegedly of defendant in the transaction, at the same time and without his knowledge also was acting as agent for plaintiffs who had agreed to pay him a ten per cent commission upon all payments received by them, and did so. The doctrine is familiar and well recognized that an agent cannot act as such for both parties to the same transaction in matters involving the

exercise of discretion, where there are conflicting interests between the parties, without the knowledge and consent of both principals. See, 3 C.J.S., p. 15, §§141, et seq.; 2 Am. Jur. 204, 205. If the agent represents two principals in the transaction, the principals having no knowledge of the common agency, the transaction is voidable at the election of either principal. See, 1 Restatement of the Law—Agency, §313 (2). Such right of repudiation is solely personal to the principals, or one of them, and a third party cannot raise such objection. 3 C.J.S., p. 12, §139. See, also, *Greenwood v. Spring,* 54 Barb. 375, 378; *Huggins Cracker & Candy Co. v. People's Ins. Co.,* 41 Mo. App. 530; *Shurtleff v. Norcross,* 95 Vt. 420, 115 Atl. 494, and *Remick v. Butterfield,* 31 N. H. 70, 64 Am. Dec. 316. When the foregoing legal considerations are applied to the facts herein, we are satisfied the principle invoked by defendant is unavailable to him.

Under the evidence the transaction may be divided into three phases. The initial financial obligation of defendant arose from the first, and the manner and time of payment thereof were the subjects of the latter two. The first phase had its inception in 1928 when plaintiffs and another party sold certain oil and gas leases in Gordon County, Indiana, to the Texana Oil Company for $100,000. Under the terms of the written agreement, signed by Texana, per Bauer as vice-president, $10,000 of the purchase price were paid in cash, and notes for the balance of $90,000 were to be executed and delivered to plaintiffs, each of said notes to have "certain collateral attached as agreed by the parties hereto, said collateral being certain shares of common capital stock of American Controlled Oil Fields, * * * ." Shortly after the execution of this agreement defendant endorsed the notes and signed the collateral pledges mentioned.

It is to be observed that defendant did not sign the purchase and sale agreement; neither did his name appear thereon or therein in any manner, nor was he an officer, director or stockholder in Texana, but he testi-

fied that he was "interested" in Texana solely by the circumstance that he "controlled" another company which "controlled" a majority of Texana stock. It was not shown that Bauer, the vice-president of Texana, was in any manner connected with the "other" company controlled by defendant, nor was there any evidence whatsoever that in the negotiations leading to the acquisition of the oil leases by Texana or in the execution of the agreement therefor, Bauer acted or was employed to act as an agent for, or on behalf of defendant. While in these circumstances, because of Bauer's dual agency, it may be that Texana, if it had not consented to the commission arrangement (and there is nothing to show that it did not), could have repudiated the agreement, tendered back the leases and demanded a restoration of the status quo (which it never has done), nevertheless, it would seem certain that defendant, never having proved that Bauer was his agent in the purchase and sale transaction, was in no position to assert the contention in question to avoid the obligations he had assumed personally and independently thereunder.

As the second phase of the transaction Texana and other corporations, from time to time, made payments on the purchase price until July, 1930, when $65,000 still remained due. By this time the oil leases secured from plaintiffs by Texana had been transferred by it to Indiana Southwestern Gas and Utilities Corporation, which then paid $20,000 to plaintiffs on the balance of the purchase price, leaving some $45,000 due. Coincident with this payment defendant requested that certain of the original collateral pledged might be withdrawn and other collateral substituted, to which arrangement plaintiffs acceded. In the consummation of this arrangement plaintiffs surrendered to defendant the original notes remaining unpaid and received in lieu thereof three new notes for $15,000 each, all endorsed and guaranteed by defendant. Defendant personally attended to all the details arising in this second phase of the transaction.

82

Concerning certain particulars of the third phase of the transaction, the testimony was in dispute. In such conflicting situations, considering the verdict of the jury, we are required to accept plaintiffs' evidence as being true. The three notes last mentioned not having been paid, in November, 1930, plaintiff Huber went to New York where he had several conferences with defendant. These conferences resulted in an arrangement perfected by defendant and his attorney, a Mr. Friedman, whereby some $20,000 were to be paid by some company, of which $15,000 were to be used to take up one of the three $15,000 notes held by plaintiffs, the balance of the $20,000 to be turned over to Texana. It was further contemplated that upon receipt of such payment, plaintiffs would surrender the three old $15,000 notes, together with certain collateral and in return would receive two new notes for somewhat in excess of $15,000, each in exactly the form of the surrendered notes, each endorsed and guaranteed by defendant. Defendant, in his own handwriting, at the time, in the proper blanks, filled in the principal amounts of the notes and then signed the endorsement and guaranty. Plaintiff Huber returned to Indiana and on December 7, 1940, Bauer telephoned Huber asking him to meet Bauer at a certain bank in Vincennes the next day, which was done (December 8), to complete the arrangements made in New York. At such bank there was a letter from Mr. Friedman, defendant's attorney, the two notes here in controversy, a check for $20,000 or more drawn on a Virginia bank, and other papers relating to an escrow whereby plaintiffs were to deposit with such bank the three notes and the collateral to be surrendered when the check cleared, whereupon plaintiffs were to receive $15,000 and the two new notes in suit, and the three old notes and the surrendered collateral were to be sent by the bank to defendant or Texana. Subsequently the check cleared and the transaction was carried out in accord with the escrow. On December 9th defendant

wired plaintiffs, stating, inter alia: "I now notify you that my endorsement (on the new notes) is of no effect until I pass on contents of notes and terms," and upon this basis claimed that the delivery of the notes was unauthorized and as well, on certain other evidence, that Bauer had violated defendant's instructions in putting the notes in escrow. Plaintiffs contended that the instructions to Bauer and the telegram were not received until after the escrow was completed and, as has been said, the jury's verdict in their favor must be given the effect of concluding this issue against defendant. At the trial it was admitted by plaintiffs that Bauer acted as agent for defendant in the escrow transaction and most of the argument of counsel for defendant is hinged on this circumstance, it being contended that therefrom it must be assumed that Bauer acted for defendant in all his previous dealings with plaintiffs. As has been pointed out hereinabove, there is nothing in the evidence to justify such assumption as to the earlier phases of such transaction and Bauer's assignment to carry out the details of the terminal arrangement made by defendant personally, unrevoked until after the precise consummation, amounted to an agency which involved no exercise of discretion on Bauer's part and, hence under the rule, could give defendant no ground to avoid the preexisting obligations incurred by himself without the intervention of any agent. Except as to the matter of escrow, plaintiffs consistently denied that they had either notice or knowledge that Bauer represented defendant in any phase of the deal. Although not of decisive import, we think it may be observed with propriety, that previous to the challenged escrow arrangement, defendant was liable, as he admitted as a witness, on the three notes aggregating $45,000. As a result of the escrow his liability was reduced to $30,000 by the third-party payment and in addition a portion of the collateral held by plaintiffs was released to the debtors, so it is thus apparent that instead of being prejudiced

by the last transaction, defendant, in effect, was benefitted thereby.

■■ It next, and lastly, is contended by defendant that plaintiffs could not be holders in due course for value because the notes had not been negotiated to them. Counsel argues that the mere fact that a note was made payable to the order of the maker and by the maker endorsed, as was the form of the notes in suit, does not make the first person who received the note after such endorsement, a holder in due course under the Negotiable Instruments Act. It is said that in the nation the decisions of courts of last resort are in conflict with respect to this matter; that two divergent lines of authority continue, and that the question never has been passed upon by this court. The many cases relating to the subject are assembled and collated in notes to be found in 32 A.L.R. 289; 68 A.L.R. 962; 97 A.L.R. 1215, and 142 A.L.R. 489. Interesting as is this problem, we are spared the necessity of deciding the question in the case at bar by reason of the circumstance that defendant herein was permitted to go to the jury on his claimed defenses of infirmity and nondelivery just as though the notes were made payable originally to the plaintiffs themselves. Further, we are unable to concur in the view of counsel that certain given instructions "created the inference" or gave the "impression" that, as a matter of law, plaintiffs were holders in due course and so denied a factual consideration by the jury of the defenses submitted.

The judgment is affirmed.