CRYSTAL ICE MANUFACTURING COMPANY v. SAN ANTONIO
BREWING ASSOCIATION.

No. 347.

1. **Contract in Restraint of Trade.**—See opinion for facts held not to constitute a contract in restraint of trade.

2. **Memorandum to Refresh Memory.**—A witness should be permitted to refresh his memory from a memorandum, not in his handwriting, if it appears that it was correct, and was made in the presence of and under the direction of the witness.

3. **Evidence of Oral Contract Not Proper.**—It was improper to allow evidence of an oral understanding between the original parties to the contract, to the effect that if plaintiff desired, it could furnish to any of its customers whenever he (Tendick) did not have ice to furnish them, without proving that defendant when it assumed Tendick's contract had notice of such understanding.

APPEAL from Bexar. Tried below before Hon. W. W. KING.

*Barnard & McGown*, for appellant.

*Upson & Bergstrom*, for appellee.

JAMES, CHIEF JUSTICE.—The parties, on April 22, 1890, appellees and J. R. Tendick, entered into the following agreement:

"STATE OF TEXAS, }
"County of Bexar. }

"This agreement, made and entered into this day between J. R. Tendick, on the one part, and the San Antonio Brewing Association on the other, witnesseth:

"That J. R. Tendick agrees to sell to the San Antonio Brewing Association all the ice which it shall need for its own use during the year 1890.

"Not, however, to exceed five tons in any one day, at $6 per ton, to be delivered to the San Antonio Brewing Association, at the factory of J. R. Tendick, on Losoya street, in the city of San Antonio, Texas, payments to be made the 10th of each month.

"In consideration of the foregoing premises, the San Antonio Brewing Association hereby agrees with J. R. Tendick, or his assigns, not to run any wagon for the delivery of ice to any person who shall retail or resell the same to any person during the year 1890.

"It is hereby agreed between the parties hereto, that in case of any accident to the machinery, whereby deliveries as provided herein cannot be made, then and in that event the said J. R. Tendick, or his assigns, shall not be liable to the other party for any damages for such nondelivery.

"In witness whereof, we have set our signatures this 22nd day of April, 1890.          "SAN ANTONIO BREWING ASSOCIATION,
          "O. KOCHLER, Vice President and Manager.
"J. R. TENDICK."

Soon afterwards (about June 1st) Tendick sold his ice factory to appellant, and there was indorsed and signed upon the above contract the following:

"Within contract is assigned to the Crystal Ice and Manufacturing Company, and accepted by us.
          "CRYSTAL ICE AND MANUFACTURING COMPANY,
          "E. F. GLAZE, Manager.
"O. KOCHLER, Vice President and Manager."

It appears from the evidence, that the Crystal Ice and Manufacturing Company proceeded to carry out the contract as their own, and it appears clearly from the evidence (testimony of appellee's manager and vice president), that the brewing company for a time sold ice to Mr. Negler for the purpose of retailing it to some extent, which appellee claimed was an infraction of one of the conditions of the contract, and refused afterwards to deliver ice, as the terms of the contract required. Plaintiff (appellee) alleged, that after July 1, 1890, it was compelled, on account of defendant's refusal to so deliver ice, to purchase ice in the markets, a total of 165 tons, for which plaintiff had to pay $1347.93 more than $6 per ton, and for which it asked judgment.

The defendant (appellant) pleaded violation of the contract by selling ice to persons who retailed it, by which defendant claimed it was absolved from further observing the contract. Also, that the contract was void as against public policy; that Tendick and the brewing association had ice plants and furnished ice to the public, and that the contract was entered into for the purpose of and with the intent to create and carry out restrictions in the ice trade, to limit and reduce the production of ice and to increase its price in the market, and to prevent competition in the manufacture, making, and sale of ice; that by said contract the brewing association bound itself not to run any wagon for the delivery of ice to any person, and agreed not to sell any ice to any person during the year 1890

By supplemental petition, plaintiff denied the alleged violation of contract, and alleged that any sales that were made were made to plaintiff's beer customers to enable plaintiff's beer to be kept in condition to sell, and was done with defendant's knowledge and consent, and that when requested so to do by defendant, plaintiff ceased to so furnish ice to its customers; and after such time defendant continued to carry out the contract until about July 1, 1890; therefore defendant had waived the violation by plaintiff of the terms of the contract, if any.

The court refused to give a charge prepared by defendant which would have directed a verdict for defendant, on the ground that the contract on its face, together with all the evidence, shows that it was in restraint of trade, "because by the terms of the contract the product of defendant, proved to be six tons of ice per day, was to be withdrawn from the trade." This charge was correctly refused.

The contract is not upon its face one necessarily in restraint of trade. It contains nothing which indicates that the brewing association was a manufacturer of or engaged in the pursuit of selling ice or intended entering upon the business, and a manufacturer ordinarily has the right to select his customers, and may sell his goods to a person at a reduced price, to be used by the customer and not sold by him. There is nothing pernicious in such an arrangement, if the restraint is such only as affords a fair protection to the interests of the party in favor of whom it is granted, and not so large as to interfere with the interests of the public. Pierce v. Woodward, 6 Pick., 206; Palmer v. Stebbins, 3 Pick., 188.

If the brewing association did not deal in ice, nor contemplated doing so, we do not perceive any detriment arising to the public from the restriction in the contract.

The agreement is innocent of any illegality tested by itself.

The evidence developed the fact that the brewing association has an ice plant of its own, with a capacity of about six tons per day; but issues arise in the evidence as to whether they did not require and use this in their own business, and as to whether they manufactured ice for sale or contemplated doing so when this contract was made. If they made ice for their own use alone and were not sellers of ice, and had no intention of becoming such, and there was evidence to admit of such finding, we fail to comprehend how the transaction can be adjudged in restraint of trade, or preventive of competition.

The issues relating to this subject were fairly submitted in the following clause of the court's charge: "If you believe from the evidence that the San Antonio Brewing Association, at the time of making the contract, or at any time during the year 1890, was engaged in the manufacture and sale of ice, and ran a wagon for the delivery of ice, or sold ice to persons who intended the same for sale, or that plaintiffs had intended to do so, and that it was the intention or effect and purpose of said contract that plaintiff should discontinue the sale of ice in the manner aforesaid, then you are instructed that the con-

tract sued on is in restraint of trade and void, and in that event you will find for defendant."

We can not consider the ninth assignment of error, as its criticism of the above charge was not presented in the motion for new trial. The judgment will not be disturbed for want of evidence to support it, or for anything contained in the charges. A number of objections were made to testimony, which we will now notice.

The witness Kochler, in his testimony relative to damages sustained by plaintiff, was allowed to refresh his memory from a statement. The objection was, that the statement was not in his handwriting, but which the bill of exceptions shows to have been made correctly in his presence, and under his direction. It is not indispensable that the memorandum should be in the handwriting of the witness. If made in his presence and under his direction, and he is able to say that it was correctly made, it is sufficient. Rice on Ev., 748.

There is nothing in the second assignment. It was alleged by plaintiff that defendant, by its manager, E. F. Glaze, had executed the indorsement on the contract, "Crystal Ice and Manufacturing Co., E. F. Glaze, Manager," and there was no issue as to Glaze's capacity. Therefore we see no injury to appellant from improper testimony (if improper), that Glaze was at that time acting as defendant's manager.

The witness Kochler was allowed to testify to an expense of $50 on a trip to Austin and Houston in the purchase of ice from other parties, but after the testimony was introduced the plaintiff withdrew it. As we are to reverse the judgment, and the question sought to be raised is not likely to appear again, we will not stop to discuss it.

The fifth assignment is without any merit whatever.

The seventh assignment is, that the court permitted the witness Kochler to testify to an oral understanding between him and Tendick, at the time the contract was made, to the effect that if plaintiff desired it could furnish ice to any of its customers whenever he (Tendick) did not have ice to furnish them.

There is no evidence to show that defendant when it assumed Tendick's contract had any notice of such understanding. Plaintiff's manager, Kochler, testified, that plaintiff sold ice to Negler, a person who retailed it among certain of plaintiff's beer customers. It was evidently to excuse this apparent breach of the contract that the above testimony was introduced.

The oral agreement would vary the terms of the writing, which forbade the selling of ice to any person who shall resell or retail the same. This the uncontradicted evidence shows was done.

We are of the opinion that this breach of the contract would have excused further performance on the part of defendant, and that the vital issue, one by which defendant could be held notwithstanding, was whether or not the defendant by its conduct waived such violation of the contract. There was conflicting evidence on the subject, and the admission of any improper evidence which was calculated to mis-

lead the jury in respect to this issue, would be ground for reversal. In our judgment the evidence of such oral understanding tended to this effect. It was calculated in the minds of the jury to excuse the breach, independent of any waiver by defendant.

For this reason, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered June 13, 1894.