**STATE v. FAIRBANKS–MORSE &
CO. et al.**
**No. 14401.**

Court of Civil Appeals of Texas. Dallas.
Oct. 26, 1951.

On Rehearing Feb. 1, 1952.

Further Rehearing Denied March 7, 1952.

See, also, Tex.Civ.App., 223 S.W.2d 339.

Price Daniel, Att. Gen., Richard H. Cocke, Jr., and Irion, Cain, Bergman & Hickerson, all of Dallas, for appellant.

Allen Wight, John N. Touchstone, John C. Cain, and George Peabody, all of Dallas, Scott, Wilson & Cureton, of Waco, Victor J. Boldin and W. B. Browder, Jr. (of Vinson, Elkins & Weems), and William N. Bonner, of Houston, and Poppenhusen, Johnson, Thompson & Raymond and Anan Raymond, of Chicago, Ill., for appellees.

BOND, Chief Justice.

The State of Texas, by its Attorney General and the District Attorney of Dallas County, instituted this suit against Fairbanks-Morse and Company, an Illinois corporation, Universal Electric Construction Company, an Alabama corporation, H. B. Gieb and Company and its successor, Municipal Engineering and Finance Company, a Texas Corporation, Ballard-Hassett Company, a Delaware corporation, and Albert C. Moore, a resident of Texas, to recover statutory civil penalties for alleged violation of the Anti-Trust Laws of this State (Art. 7426, R.C.S.1925); and to restrain the performance of their combinations, agreements and conspiracy.

Fairbanks-Morse and Company will be hereinafter designated as "Fairbanks-Morse," Universal Electric Construction Company as "Universal Electric," H. B. Gieb and Company and as successor, Municipal Engineering and Finance Corporation, as "H. B. Gieb," Ballard-Hassett Company as "Ballard-Hassett," and Albert C. Moore as "Moore."

The trial court sustained Fairbanks-Morse's special demurrers to the State's petition and, upon the State's attorneys refusing to amend, dismissed the suit as to all defendants; from which this appeal is prosecuted.

Approaching consideration of the questions here involved, it must be kept in mind

that the sufficiency of the pleadings, irrespective of what may be the proof on trial, is the dominant controlling factor, and in passing on the questions presented we are not concerned with the evidence to be offered in support of appellant's contentions.

The plaintiff alleged that about 1938, and subsequent thereto, Fairbanks-Morse was and is engaged in the business of manufacturing and selling Diesel units for the generation of electric current,—power and energy; also was engaged in the business of constructing and installing municipal electric light and power plants in the State of Texas under duly authorized permit from the State; that Universal Electric was and is also engaged in the business of constructing and installing municipal light and power systems in this State; that H. B. Gieb was and is engaged in the business of consulting engineer with respect to the preparation of plans and specifications for the erection of municipal electric light and power systems, and the supervision, construction and installation of such systems in this State; that Ballard-Hassett was and is engaged in the purchase and sale of municipal electric light and power bonds without this State; and that Moore also was a consulting electrical engineer engaged in the preparation of such plans and specifications. The foregoing facts are related in State's petition; and, further, the petition (omitting formal parts) alleges:

"VII. Plaintiff alleges that sometime about 1938 the exact date being unknown to the plaintiff, but well known to the defendants, the defendants, Fairbanks-Morse, H. B. Gieb and Albert C. Moore did combine their capital, skill or acts to create, or which tended to create, or carry out restrictions in trade or aids to commerce and to create and carry out restrictions in the free pursuit of the business of the construction and installation of municipal electric light and power systems in the State of Texas and did, pursuant to such combination, enter into an agreement or understanding whereby it was agreed that the said Fairbanks-Morse would promote the sale and installation of municipal electric light and power systems

in various towns within the State of Texas. That it was of the essence of said combination, agreement or understanding that the promotion of such electric light and power systems would be done only in the smaller towns of this State, and especially in those towns which did not employ municipal engineers which were qualified to prepare plans and specifications for municipal electric light and power systems or who were qualified to supervise the construction thereof, that as a part of said combination, agreement or understanding and in furtherance thereof, Fairbanks-Morse Company agreed to sell the governing bodies of such cities upon the advantages of owning and operating a municipal electric light and power system and that as a part of the promotion of such systems Fairbanks-Morse Company agreed to induce such towns to employ as consulting engineers the defendants H. B. Gieb or Albert C. Moore, and that the said H. B. Gieb and Albert C. Moore agreed that as their contribution to said combination, agreement or understanding, they would prepare plans and specifications for municipal electric light and power systems in the cities in which they were employed and that in the preparation of such plans and specifications the same would be so drafted as to prevent or lessen the competition on the bidding on such construction and installation and in such manner that only Fairbanks-Morse could competitively bid its type of machinery, engines and equipment and so that only Fairbanks-Morse could bid on the construction and installation of municipal electric light and power systems; that such plans and specifications were to be prepared by the said H. B. Gieb and Albert C. Moore so as to effectively prevent or lessen competition and to create and carry out restrictions in the free pursuit of the business of the construction and installation of municipal electric light and power systems together with the equipment and material used therein, and especially with regard to the Diesel units required for such systems. That as a part of such combination, understanding or agreement, the said Albert C. Moore and H. B. Gieb were

to place in such plans and specifications certain base bids on the Diesel units necessary therefore, along with certain alternate bids. In both base and alternate bids, maximum piston travel ,speed was to be limited to conjunction with maximum permitted mean effective pressures, operating rotative speeds, fuel consumption and operating water temperatures of the respective units in a manner as to permit Fairbanks-Morse to bid on both base and alternate units while at the same time effectively preventing or lessening the number of competitive manufacturers of Diesel engine units who could bid on an equal basis. In both base and alternate bids, the mechanical design and method of operation of such units such as the fuel injection, type of governor, method of crank case scavenging, alloy type and carbon content of steel used, fabrication, including the prohibition of certain 4-cycle engines were to be so limited by the plans and specifications to permit Fairbanks-Morse to bid on both base and alternate units while at the same time effectively preventing or lessening the number of competitive manufacturers who could bid on an equal basis. That by reason thereof, not only was Fairbanks-Morse placed in a more favored position with regard to the Diesel units required for such systems, but such combination, agreement and understanding was made for the further purpose and did have the further effect of effectively eliminating or lessening competition in the business of the construction and installation of municipal electric light and power systems for the reason that the construction division of the defendant, Fairbanks-Morse alone, could submit bids which could qualify under such plans and specifications with reference to the Diesel units necessary and required in such systems.

"VIII. Plaintiff alleges that after the formation of such combinations, agreements or understandings above alleged and pursuant thereto, the said H. B. Gieb was employed and did prepare plans and specifications for the cities of San Augustine, Sanger, Garland, Crosbyton and Seymour, and the said Albert C. Moore was employed and did prepare plans and specifications for the cities of Weatherford, Baird and Sonora; that pursuant to such combination, agreement and understanding, said plans and specifications in each respective city contained the provisions alleged in paragraph VII hereof, and by virtue thereof, did in truth and in fact effectively prevent or lessen competition and tended to create and carry out restrictions in the free pursuit of the business of the construction and installation of municipal electric light and power systems.

"IX. Plaintiff further alleges that in the preparation of such plans and specifications by the said H. B. Gieb and Albert C. Moore as above alleged, said defendants were, at all times material hereto in truth and in fact, but carrying out their part and portion of said combination, understanding and agreement, above alleged, and were at all times material hereto acting as a member of such combination, understanding and agreement while at the same time holding themselves out to said cities and representing to said cities that they were acting for and on behalf of said cities.

"X. Plaintiff further alleges that the combinations, agreements and understandings hereinbefore alleged between Fairbanks-Morse, H. B. Gieb and Albert C. Moore continued until about 1940, the exact date of which is unknown to plaintiff but is well known to the defendants, at which time the defendants, Universal Electric and Ballard-Hassett were and did become a part of and joined said combination, agreement or understanding and the same was expanded by additional agreements and understandings as hereinafter alleged, so as to not only effectively prevent or lessen competition in the construction and installation of municipal electric light and power systems and in the material and equipment used therein, but so as to restrict and lessen competition in all of its phases, including the construction and installation of such systems, the furnishing of equipment and material therefor and the financing thereof.

"That about 1940, the exact date being unknown to plaintiff, but well known to defendants, the defendant Albert C. Moore withdrew from said combination, agree-

ment and understanding, and thereafter said combination, agreement and understanding was carried out by the defendants Fairbanks-Morse, H. B. Gieb, Universal Electric and Ballard-Hassett. That as a part of said expanded combinations, agreement and understanding, it was agreed by and between the members thereof that in addition to effectively lessening or restricting competition as set forth in paragraph VII herein, that the business of the construction of such plants would be further controlled by an agreement with the defendant H. B. Gieb that in such cities in which the combination above alleged might be able to induce his employment, he would provide in such plans and specifications that bidders would be required to bid on the project as a whole rather than by sections. That the defendant, Fairbanks-Morse, agreed as a part of said combination, agreement or understanding to sell its engines only to Universal Electric, and further agreed that its construction division would not bid upon projects on which Universal Electric was bidding, and that Fairbanks-Morse would add ten points to the price of the Diesel engines to cover the profit it would have made if it had bid on such construction. That in addition thereto, it was agreed by and between the defendants as a part of such combination, agreement and understanding above alleged that in the plans and specifications for the construction and installation of such systems, it would be required that bidders accept revenue bonds in lieu of cash for services rendered and materials furnished in constructing and installing municipal electric light and power systems and the defendant, Ballard Hassett, agreed, as its part of said combination, understanding and agreement that it would purchase exclusively from Universal Electric bonds accepted by Universal Electric in lieu of cash. That Universal Electric as a part of such expanded combination, agreement and understanding, agreed that it would bid only upon the construction and installation of municipal electric light and power systems when and only when the plans and specifications provided that bidders for the construction and installation of municipal electric light and power systems should be required to accept revenue bonds in lieu of cash for services and material furnished in connection therewith, and when and only when said plans and specifications provided said project should be bid as a whole. * * *."

The plaintiff further alleged that after the formation of the expanded combination, agreement and understanding above related, and in pursuance thereof, Fairbanks-Morse surreptitiously induced and obtained the employment of H. B. Gieb and Moore by the cities named in the petition as consulting engineers to formulate their plans and specifications,—as a basis, presumably, for fair competitive bidding under the requirements of Art. 2368a, Vernon's Ann. Civ.St.; that in furtherance of and pursuant to such design, H. B. Gieb and Moore were employed by said cities to prepare plans and specifications, which, unknown to the governing authorities of said cities, effectively prevented or lessened competition in the free pursuit of the construction and installation of their municipal light and power systems; and that, in absence of such plans and specifications prepared by H. B. Gieb and Moore, Fairbanks-Morse and Universal Electric refused to bid against each other in the construction and installation of such municipal light and power systems; and, further, that Fairbanks-Morse refused to sell its Diesel engines and equipment to any bidder or potential bidder other than the Universal Electric; that the Universal Electric refused to purchase Diesel engines and equipment from any source other than Fairbanks-Morse, or to bid on the construction and installation of any municipal light and power system except where the bidders were required to accept municipal bonds instead of cash, and, in turn, the bonds be sold by the cities only to Ballard-Hassett; and that Ballard-Hassett in pursuance of such agreement and understanding refused to buy any such bonds from any source other than from Universal Electric, and Universal Electric refused to sell to any purchaser other than Ballard-Hassett.

By virtue of the above alleged facts, the State's contention is that by entering into

the aforesaid exclusive arrangements, agreements and understandings, carried out by Fairbanks-Morse and Universal Electric in the bidding and construction of municipal light and power systems in the cities of Jasper, Sonora and Winters, aided and abetted by H. B. Gieb and Albert Moore and Ballard-Hassett, the parties have violated the Anti-Trust Laws of this State, thus becoming liable to the State for statutory penalties; and that because of the expanded arrangements, understandings and agreements and the carrying-out of same by all of the alleged parties, they effectively created an unlawful trust and a monopoly in restraint of trade; thus guilty of violation of law. Arts. 7426, 7428, R.S.1925, Vernon's Ann.Civ.St., arts. 7426, 7428.

Statute 7426 defines a "trust" as "a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them * * *" entered into for the purpose of carrying out restrictions in trade or preventing or lessening competition in the manufacture, sale or purchase of any commodity, or to abstain from engaging in or continuing in any business authorized or permitted by the laws of this State. State v. Central Power & Light Co., 139 Tex. 51, 161 S.W.2d 766.

In the last analysis, in legal effect the plaintiff's petition relates a combination of capital, skill and acts of the defendants which tends to create, and did create, restrictions in trade. The planning and combination of capital, skill and acts in the construction of municipal electric light and power plants as to stifle or interfere with, or prevent, free competitive bidding for the construction of municipal light and power plants, is a trust condemned by the statutes, supra.

Furthermore, on the face of plaintiff's petition, a monopoly was effectively created in violation of Art. 7428a, Vernon's Ann. Civ.St. The defendant Fairbanks-Morse contributed its generating electric units and materials—its capital investment, and contributed the acts and skill of its promotional department; Fairbanks-Morse

further agreed to sell its generating units to no other bidder than Universal Electric, and not to bid against any other member of the combination. The Universal Electric also agreed to and did contribute its skill as a construction company and such of its capital and acts as were necessary to carry out its end of the unlawful scheme. The defendants Gieb and Moore contributed their skill, separately and at different times, in planning and specifying restricted electric light and power units in aid and abetment of the combination scheme. The defendant Ballard-Hassett contributed its capital by agreeing to purchase the municipal revenue bonds only when the Universal Electric had secured the construction of such plants and had taken as payment for its services the municipal bonds. By virtue of such combination of capital, skill and acts, the defendants are and were able to obtain an advantage in the bidding and construction of such plants.

It will be observed that Art. 7426(1), supra, is very comprehensive and contains no word of limitation or exception. The only requirement is that the combination be created for the purpose of, or will carry out, restriction in the free pursuit of any business authorized by law. Art. 1108, Vernon's Ann.Civ.St., authorizes cities to construct, purchase or acquire electric light and power systems; and the law authorizes such cities to issue revenue bearing bonds in payment thereof. Art. 2368a provides that the contract for the construction, purchase or acquisition of the electric light and power system shall be let to competitive bidders, where all parties so inclined would have an equal right to bid on such construction work; and any combination of capital, skill or acts so entered into as to preclude fair competitive bidding, or prevent the procuring of engineers, or the procuring of financial assistance in furtherance of such enterprise, such combination, as here alleged, is condemned as against public policy. "While the mere purpose without the combination does not constitute the offense, the formation of the purpose and the agreement upon a contract by which it is to be carried

out, in the execution of which contract the capital, skill, or acts of both are to be used, does complete the offense." State v. Missouri, K. & T. R. Co., 99 Tex. 516, 91 S.W. 214, 219. Such incriminatory facts and circumstances are susceptible of proof by direct and circumstantial evidence on trial of the cause.

Turning to appellees' counterpoints of error, it is contended that H. B. Gieb and Moore being employees or agents of the cities involved, in the preparation of plans and specifications for municipal electric light and power plants (thus acting for the cities), there could be no conspiracy or combination in violation of the Anti-Trust Laws. If such agents were in fact unrestricted, which is not alleged, but, on the contrary, were in effect members of the combination, pawned to the cities as part of the conspiracy to so restrict all plans and specifications of the kind and character of materials to be used in the construction of the plants as to hinder competitive bidding (unknown to the authorities of said cities), they became parties to the criminal act. And, further, the appellees contend that the cities involved are indispensable parties to the suit. To this we cannot agree. The cities involved in the alleged transactions were mere victims of the alleged conspiracy, and not open parties thereto. The offense alleged was and is against public interest, and not directed against the cities alone. Contracts tending to lessen competition, restricting the submission of bids, in restraint of trade, or stifling competition, are inhibited by law and contrary to public policy. Uvalde Construction Co. et al. v. Shannon, Tex.Civ. App., 165 S.W.2d 512, 513; State v. Missouri, K. & T. R. Co., supra. "Under our statute the effect on the public of an agreement which is against public policy is not essential; the tendency is enough to bring it within the condemnation of the law." State v. Racine Sattley Co., 63 Tex. Civ.App. 663, 134 S.W. 400, 403. Indeed, the cities named in the petition were parties to the alleged contracts for the construction of their electric light and power plants; and, ordinarily, it may be true, without

deciding, that a combination between a municipality and a third party does not come under the condemnation of the statute. In the instant case, however, the cities named are alleged to be innocent victims of an unlawful combination, and were secretly imposed upon by the engineers Gieb and Moore. It may be said that the acts and deeds of the engineers as agents of the cities, in law, would be the acts and deeds of their principals, in absence of the alleged secret arrangements induced by Fairbanks-Morse for the purpose of aiding and abetting the combination; but the acts and deeds of said engineers, allegedly, were outside the purview of their employment, and detrimental to the best interests of the cities; because of which, the cities do not come under the condemnation of the statute perforce of the engineers' deeds and acts.

The appellees further contend that the trial court erred in overruling their plea to the jurisdiction, particularly as to Fairbanks-Morse; that it being a foreign corporation, manufacturing its electric units out of the State and not having its units within the State, the suit abridges its rights in interstate commerce, because of which the United States Courts only have jurisdiction over the subject-matter in suit. The Fairbanks-Morse corporation is doing business in this State under duly authorized permit, and, at the time complained of in this suit, is alleged to have entered into the unlawful combination in restraint of trade in this State, a violation of the laws of this State. The corporation therefore is amenable to the laws of this State and the courts of this State have jurisdiction of plaintiff's suit. The suit in no way interferes with the defendants' lawful pursuit of business.

In the light of the record and briefs forcefully presented, we have carefully considered all of appellees' counterpoints of error, with which we are not in accord. They are severally overruled. We sustain appellant's contentions. Accordingly the judgment below is reversed and cause remanded to the trial court to be tried on the merits in consonance with the views herein expressed.

654

On Rehearing.

YOUNG, Justice.

 The State's anti-trust suit for final injunction and penalties (against Fairbanks-Morse, $50 to $1,500 per day from January 1, 1938 to date of petition, June 9, 1948) is for all practical purposes a criminal action and subject to the same rules of strict construction. Ford Motor Co. v. State, 142 Tex. 5, 175 S.W.2d 230; also subject to the stringent rule of pleading applicable to injunctions "that 'the averments of material and essential elements must be sufficiently certain to negative every inference of the existence of facts under which petitioner would not be entitled to relief'"; Powell v. City of Baird, Tex.Civ.App., 132 S.W.2d 464, 468; the petition, in other words, being nowise aided by presumption or intendment.

 Above rules should be borne in mind; further that only two subdivisions of our comprehensive and highly drastic laws against monopolies and restraints of trade are here involved. They provide in part: Article 7426: "A 'trust' is a combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them for either, any or all of the following purposes: (1) * * * to create or carry out restrictions in the free pursuit of any business authorized or permitted by laws of this State." Art. 7428: "Either or any of the following acts shall constitute a conspiracy in restraint of trade: 1. Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or any commodity, enter into an agreement or undertaking to refuse to buy from or sell to any other person, firm, corporation or association of persons, any article of merchandise, produce or commodity."

It is also obvious upon analysis of appellant's petition (second amended original) that the principal target or object of attack is Fairbanks-Morse Company and Texas sales of its Diesel engines. Nevertheless and despite this simple fact, the first count of the State's indictment consists of the novel but formidable charge that such Chicago concern and others named have combined their capital, skill and acts for the purpose of creating and carrying out restrictions on the free pursuit of the *business of constructing municipal light and power systems.* In the first place, it is quite evident that the construction of a light plant is not in legal significance a commodity or an article of commerce and therefore outside the scope of Art. 7426, defining "trusts." In Dannel v. Sherman Transfer Co., Tex.Civ.App., 211 S.W. 297, 298, this court long ago held that: "The 'combination of capital, skill or acts by two or more persons' * * * contemplated by the statutes must be in relation to articles or commodities of merchandise, produce, or commerce, or where they are in any manner affected or controlled"; and in Duggan Abstract Co. v. Moore, Tex. Civ.App., 139 S.W.2d 198, 201, it was ruled that the Anti-Trust statutes were passed "to protect the general public in the manufacture, sale, distribution, etc., of merchandise, produce and commodities * * *." See also Forrest Photographic Co. v. Hutchinson Gro. Co., Tex.Civ.App., 108 S.W. 768; Smythe v. Fort Worth Glass & Sand Co., 105 Tex. 8, 142 S.W. 1157. Such holdings, definitive of "commodities" or "articles of Commerce," are not peculiar to Texas Courts. In Kidd v. Pearson, 128 U.S. 1, 9 S.Ct. 6, 10, 32 L.Ed. 346, it is said: "Manufacture is transformation— the fashioning of raw materials into a change of form for use. The functions of commerce are different." And in People of State of New York ex rel. Rogers v. Graves, 299 U.S. 401, 57 S.Ct. 269, 271, 81 L.Ed. 306, it is pointed out that "The building * * * of * * * a road or a canal is not commerce in the substantive sense, * * *."

 Secondly, in my opinion the statutory language of free pursuit of any business authorized or permitted by law was never intended to comprehend any work of construction en masse. Appellant says that since passage of Art. 1108, V.A.S., authorizing municipalities to construct their own light systems, the result is the creation of a new business authorized or

permitted by law; citing in support, Lewis v. Weatherford, M. W. & N. W. Railway Co., 36 Tex.Civ.App. 48, 81 S.W. 111 and Fort Worth and D. C. Ry. Co. v. State, 99 Tex. 34, 87 S.W. 336, 70 L.R.A. 950, which decisions do not sustain the contention made. These were Anti-Trust cases with the same subdivision, Art. 7426, subd. 1, under examination. In the first, Lewis's appeal, complaint was made of one Green's exclusive contract with the railroad to solicit baggage hauling on its trains; the other predicated on the railroad's exclusive contract with the Pullman Company for hauling its sleeping cars. Relief in both instances was denied, the Supreme Court concluding that no violation of the subdivision was involved; going on to say that while the hauling of baggage *was* a business permitted by law, it was only with the railroad's approval that same could be conducted on its own premises; and similarly in the Pullman case that the hauling of sleeping cars was a business that could only be done "pursuant to an understanding" with the railroad company. So here and similarly, the construction of a municipal light plant is a legitimate business, but surely it cannot be carried on in a particular municipality *except* by agreement or contract with its City Council. The Anti-Trust statute does not create a new business for any person, nor does it confer a new right in the property of others. Fort Worth & D. C. v. State, supra. The conclusion is inescapable that the building of a municipal light system—always and necessarily an isolated transaction—does not constitute in any statutory sense the free pursuit of a business authorized by law; and the derelictions of these defendants must be found, if at all, in some other subdivision of these penal laws.

This brings us to the only other point in the State's indictment, predicated on Art. 7428–1, V.A.S., (appellant's point 2), complaining of the court's error "in dismissing the suit because the agreement between Fairbanks-Morse and Universal Electric whereby Fairbanks-Morse would sell its Diesel engines only to Universal Electric, and Universal Electric reciprocal agreement to buy such engines only from Fair-

banks-Morse as alleged in paragraph XV of appellant's second amended original petition, constituted a violation of Article 7428(1), Revised Civil Statutes of Texas." The court's ruling above will be considered in view of the following facts alleged in the State's petition and otherwise of record:

The charge is made that defendant Moore was employed as City Engineer on recommendation of Fairbanks-Morse by three cities, Weatherford, Baird and Sonora, and that he prepared specifications in accordance with an agreement under which only Fairbanks-Morse could submit bids on the Diesels required, because of which Universal Electric was the successful bidder at *Sonora*. As to defendant Gieb, it is charged that he was appointed City Engineer upon recommendation of Fairbanks-Morse by the cities of San Augustine, Sanger, Garland, Crosbytown, Seymour, Winters, Angleton, Jasper, Levelland and Littlefield, and that he prepared specifications so as to exclude all bidders except Universal Electric; as a result of which it was the successful bidder at *Winters* and *Jasper*.

Not referred to in majority opinion, but part of the record, is the plea in abatement of appellee Fairbanks-Morse reading as follows: "That this suit should abate and be dismissed for want of jurisdiction in that: (a) Neither this court nor any other court of this State has jurisdiction of the subject matter of this proceeding in so far as this defendant is concerned, same constituting an attempt to regulate commerce between the States of the United States, in respect of which only the Courts of the United States have been given jurisdiction, and in this connection defendant avers that it does not now, and did not at any of the times described in plaintiff's petition, have either a factory for the manufacture of its product in the State of Texas, or a stock of Diesel engines therein; that any and all transactions described in said petition then or now, or contemplated or in prospect in Texas, related to the manufacture of such engines in a State or States of the United States other than the State of Texas and the shipment thereof from such oth-

656

er State into the State of Texas." A jurisdictional issue being thus raised, the court heard evidence pertinent thereto in limine (pretrial), Pecos & Northern Texas Ry. Co. v. Cox, 106 Tex. 74, 157 S.W. 745; Watson v. Baker, 67 Tex. 48, 2 S.W. 375; Galley v. Hedrick, Tex.Civ.App., 127 S.W. 2d 978; and made findings thereon, viz.: "* * * that at the time of the transaction involved in this suit, as described in plaintiff's pleadings, the defendant Fairbanks, Morse and Company did not have within the State of Texas a factory for the manufacture of Diesel engines or any stock of such engines in this State, and that (the transactions relative to any sales by it of such engines or attempts to sell the same to any of the other parties hereto or to any of the cities mentioned in said pleadings heretofore related to and involved the manufacture of such engines in another State of the United States, and the shipment thereof into the State of Texas, which would be interstate commerce, but the court finds that such Interstate Commerce would only be incidental to the transactions as described in plaintiff's pleadings) * * *." Wording of the above order, "transactions as described in plaintiff's pleadings," obviously refers to the successful bidding by Universal Electric in the towns of Sonora, Winters and Jasper; and notwithstanding the fact of Fairbanks-Morse having a permit to do business in Texas, aforesaid findings would undoubtedly stamp the transaction between this corporation and the construction company as interstate in character. "The transaction under consideration was commerce between a citizen of New York and a citizen of Texas, whereby the former agreed to manufacture the albums in New York and to deliver them at Galveston, Texas. Therefore it was interstate commerce which was not subject to the antitrust laws of this state. * * *." Albertype Co. v. Gust Feist Co., 102 Tex. 219, 114 S.W. 791, 792.

But even assuming a sound basis for the further court finding that such interstate dealing was "only incidental to the transactions as described in plaintiff's pleading" (having reference to the agreement between Fairbanks-Morse and Uni-

versal Electric whereby such manufacturer would sell its Diesels only to Universal on its Texas jobs of municipal construction and the latter to buy the necessary engines from Fairbanks-Morse), the result would not be offensive of Anti-Trust Laws. Our Supreme Court has repeatedly held that so long as only a definite and determinable portion of a purchaser's requirements are affected by the contract under examination, there is no violation. In this case, from a reading of plaintiff's petition and as appellee Fairbanks-Morse correctly states: "It is only alleged that Universal agreed to purchase from Fairbanks-Morse such units as it might require in connection with contracts to erect municipal light plants, which, under the allegations amounted to three units in ten years. It is not alleged that Universal was under any obligation to purchase such units from Fairbanks-Morse required for any other purpose, such as privately-owned utility plants, municipal or privately-owned water works, irrigation systems, oil mills, cotton gins, hotels, heavy trucks, or the hundred other uses to which they can be properly put. Nor is it made to appear that Fairbanks-Morse was under any restraint upon sales for such other purposes." See Norton v. W. H. Thomas, etc., 99 Tex. 578, 91 S.W. 780; Cox, Inc. v. Humble Oil & Ref. Co., Tex.Com.App., 16 S.W.2d 285; Jones Inv. Co. v. Great A & P Tea Co., Tex.Com.App., 65 S.W. 2d 495; Twaddell v. H. O. Wooten Grocer Co., 130 Tex. 42, 106 S.W.2d 266; Guadalupe-Blanco River Authority v. City of San Antonio, 145 Tex. 611, 200 S.W.2d 989; Padgitt v. Lone Star Gas Co., Tex.Civ. App., 213 S.W.2d 133. The court in the Humble Appeal, supra [16 S.W.2d 287], goes on to say: "* * * Here plaintiff in error did not agree to buy *all of the gasoline purchased by him* from defendant in error. The agreement was that he would buy the amount used in the operation of a certain filling station. He was at liberty to purchase any amount of gasoline from any other company which might be used in the operation of any other similar business. The effect of the agreement made by him was to contract to purchase gasoline from defendant in error, the amount to be meas-

ured by that used in the operation of a particular filling station. Such agreement did not constitute a conspiracy in restraint of trade, but was a valid *and enforceable one.*" (First emphasis by the Court, second mine.)

Of the cases cited by appellant to the contrary, Wood v. Texas Ice and Cold Storage Co., Tex.Civ.App., 171 S.W. 497, and State v. Racine Sattley Co., 63 Tex.Civ. App. 663, 134 S.W. 400, 403, the first has been severely limited if not actually overruled by the foregoing Supreme Court decisions, and likewise outmoded is the theory advanced in the second, State v. Racine Sattley that " 'The law did not intend to regulate restrictions in trade, but to prohibit them entirely, without regard to their immediate effect on trade.' "

█ Furthermore appellant cannot invoke the terms of 7428, subd. 1, because of insufficiency of pleading. That subdivision in material part defines conspiracy in restraint of trade as "where any two or more * * * corporations * * * *who are engaged in buying or selling* * * * any commodity, enter into an agreement * * * to refuse to buy from or sell to any other person * * * any * * * commodity." (Emphasis mine.) Under any strict or even reasonable construction of the subsection, it contemplates an agreement by two concerns *both of whom are engaged in buying or selling,* who by agreement refuse to sell to some third party; and it has never been applied, so far as my research discloses, when one of the parties was the ultimate consumer (as was the contractor here in the purchase of Diesel engines). It is also to be observed that the parties must be so engaged at time of making the agreement, for the simple reason that if one of the parties is not so engaged at the time, there can be no restriction of trade involved in his agreement to purchase from a particular *seller and no other.* The point just made is illustrated in Crystal Ice Mfg. Co. v. San Antonio Brewing Ass'n, 8 Tex.Civ.App. 1, 27 S.W. 210, 211, holding in part: "If they made ice for their own use alone, and were not sellers of ice, and had no intention of becoming such, and there was evidence to

admit of such finding, we fail to comprehend how the transaction can be adjudged in restraint of trade or preventive of competition. * * *"; and in the following from Nickels v. Prewitt Auto Co., Tex. Civ.App.; 149 S.W. 1094, 1095; "The language 'who are engaged in buying or selling,' etc., was evidently placed in the statute for the purpose of limiting that provision to merchants and others engaged in some particular business; and therefore, in order to show a violation of that provision, it is necessary to allege and prove that the parties to the alleged illegal contract were engaged in the business of buying or selling such articles as the contract relates to." There being no pleading to the effect that at time of making the agreement in question, Universal, the Alabama contractor, or any other defendant was engaged in the business of buying Diesel engines in Texas, the resulting insufficiency of fact allegations is such as to preclude any relief under the particular subdivision.

These conclusions clearly demonstrate to my mind that appellant's case as pled, presents no set of facts to which these drastic antitrust penalties can be applied; and this, although the remaining defendants have been referred to only incidentally if at all.

The principal defendant is Fairbanks-Morse; appellant's basic allegations being that the outlined scheme was concocted by such manufacturer to "promote the sale and installation of municipal light and power systems within the State of Texas." Apparently none of the other defendants were expected to participate in the program of promotion or contribute thereto. As the only end described in the pleading on part of Fairbanks-Morse was the sales of its engines, which are found to be either interstate transactions or under an agreement so limited in scope as to be lawful, I submit that the charge of conspiracy against the remaining defendants is left entirely without support and becomes groundless. Aside from this, the other major element in the means allegedly used by Fairbanks-Morse to promote the sale of engines was an agreement by Ballard-Hassett, an Iowa concern, to purchase from the suc-

cessful bidder an amount of municipal warrants—manifestly a matter of interstate commerce.

 The conclusions hereinabove stated amply justify the trial court's ruling on exceptions and affirmance of cause. However, other considerations, establishing as baseless the State's charge of antitrust violations, should be discussed. First, as to the engineers Gieb and Moore and their part in the socalled conspiracy (any mention of one herein having reference to both). It is charged that Gieb and Fairbanks-Morse agreed that the latter would promote certain cites on installation of their own electric light systems, recommending such appellee as an engineer for the proposed project; that, and when, so employed as engineer, he would draw the plans and specifications for the improvements so as to lessen or eliminate competition in favor of Fairbanks-Morse. There is no allegation that either Gieb or Moore did not honestly believe that the engines and units supplied by Fairbanks-Morse were not the best, considering the amount spent for construction; nor that the plans and specifications were not to the best interests of the city. It is merely charged in such connection that Fairbanks-Morse was Gieb's undisclosed principal and that the respective cities knew nothing of the understanding alleged. We must assume for purposes of this appeal that engineer Gieb did everything charged to him, yet by the same token and pleading, it must be further assumed that he honestly believed an investment in Fairbanks-Morse equipment was to the best interests of the particular city, and that indeed it was; and if, in consequence, he drew plans and specifications eliminating other types of engines, such was the inevitable effect of any set of plans and specifications. But appellant alleges that Gieb's agency could not exist because of this underlying and secret conspiracy; and if bad faith and fraud (See Footnote [1]) are thus insinuated (which are indispensable to a destruction of agency), such is pled only by inference and innuendo. The general rule that "all reasonable intendments will be indulged to sustain pleading in ordinary civil case does not apply to penalty suits, wherein plaintiffs' pleadings are strictly construed and will not be aided by inferences." Ford Motor Co. v. State, supra, 175 S.W. 2d 230, Syl. 2. Since Gieb was an agent of the named municipality and acting within his jurisdiction on the occasions specified, his principals (the respective cities) must be considered as parties to the alleged unlawful conspiracy and combinations. A city cannot be guilty of a violation of the State Anti-Trust Laws. State v. Central Power & Light Co., 139 Tex. 51, 161 S.W. 2d 766. And if the completed contract under examination in the cited case be outside the scope of such laws, then, a fortiori, the preliminary negotiations here described are likewise immune.

 Lastly, we do not have here a combination of *competitors*;—any illegality

---

1. Inclusion of Messrs. Gieb and Moore in the suit at all is highly questionable. On the occasions in question they were officers of the respective cities, performing duties within their jurisdiction and discretion and no less immune than the courts from civil suit. Judge Bonner, in Rains v. Simpson, 50 Tex. 495, upon vigorous restatement of this fundamental rule, quotes from an early authority, viz.: " 'I prefer to place the decision on the broad ground that no public officer is responsible in a civil suit for a judicial determination, however erroneous it may be, and however malicious the motive which prompted it. Such acts, when corrupt, may be punished criminally, *but the law will not allow malice and corruption to be charged in a civil suit against such an officer for what he does in the performance of a judicial duty*. The rule extends to judges from the highest to the lowest; to jurors, and *to all public officers*, whatever name they may bear, in the exercise of judicial power.' " (Emphasis mine.)

In the same connection, counsel for Gieb also poses the question of whether under the circumstances of this case, his agency for the city can be raised by appellant in face of the sell settled rule that in transactions where the agent acts for both parties unknown to one of them, the issue is available only to the principal and not to a third party. See Newton v. Mann, 111 Colo. 76, 137 P.2d 776, 147 A.L.R. 772 and cases there cited.

in the statutory sense relating to a concert of action among those who would otherwise be in competitive businesses; the instant action merely portraying the noncompetitive agreements of a manufacturer, contractor, finance company, along with an engineer favorable to low speed Diesel engines, to the end of establishing a municipal light plant in a locality where none had before existed. Manifestly the thing denounced by Art. 7426, defining trusts, is a combination of competitors. " * * * we are led to the conclusion that the union or association of 'capital, skill or acts' denounced is where the parties in the particular case designed the united co-operation of such agencies, *which might have been otherwise independent and competing,* for the accomplishment of one or more of such purposes." (Emphasis mine.) Gates v. Hooper, 90 Tex. 563, 39 S.W. 1079, 1080. "Our Supreme Court from early times has ruled that a statutory combination cannot exist unless the two or more persons are independent and capable of acting in competition with one another; * * *." Padgitt v. Lone Star Gas Co., Tex.Civ.App., 213 S.W.2d 133, 136. "Any combination of noncompetitors is legal, it seems." Ann. Cas.1912D, p. 768.

■■■■■ Reverting to appellant's point 1 and summing up: The transactions of appellees being invariably carried on at a place where no light system existed or was being built, the question naturally arises as to what similar business was there to be interfered with? Even in State v. Racine Sattley Co., supra [63 Tex.Civ.App. 663, 134 S.W. 402] (cited in original opinion), the agreement under attack was with a customer in Waco, Texas, "where there was a market for such articles, and where many citizens were engaged in the sale and purchase of such articles." (See Footnote 2.) And can this court rely on allegations that appellees have imposed restrictions on others in the free pursuit of the business

of constructing municipal light systems, when the Attorney General fails by inference or otherwise to allege the existence in the cities named or in this State of any persons, firms, or corporations engaged in such business, and has permitted a dismissal of suit on sustaining of exceptions for lack of such allegations? What we have here, in final analysis, is a lawful combination on part of appellees to do jointly what they might with less economy have done singly; and the Attorney General has truly characterized these activities as promotional. " * * * it has been almost universally held that contracts and combinations which tend to promote business, and which only remotely, incidentally, and indirectly restrain competition, are not forbidden." 36 Am.Jur. 606. "Agreements and arrangements between contractors which are the result of honest co-operation, or which are primarily intended to enable them to accomplish an object which neither could gain if acting in his individual capacity, are not within the rule, although they may incidentally prevent the rivalry of the parties, and thus lessen competition." 36 Am.Jur. 561.

I dissent from the order of reversal because the various rulings of the trial court on exceptions were correct.

BOND, C. J., dissents.

CRAMER, Justice (concurring).

The above matter having been reversed and remanded on original submission, Justice YOUNG has now, on reconsideration of cause, filed his dissent thereto; and the writer, having reviewed the record, the original opinion, and the dissenting opinion, is of the opinion that we were in error in our original disposition of the case and that, for the reasons stated in the dissenting opinion by Justice YOUNG, the judgment below should be in all things affirmed.

I, therefore, at this time join with Jus-

2. Counsel for appellees expressly charge that the instant litigation is fostered by power and light utilities whose contracts and interests present and future may be adversely affected by installation of these municipal improvements. If so, the courts should not be used as a means for furthering the business of another exclusive combine by penalizing the competitive efforts of Fairbanks-Morse and associates.

tice YOUNG in such disposition of the case; the foregoing dissent becoming the prevailing opinion of this Court.

YOUNG and CRAMER, Justices.

The motions for rehearing are granted, our former judgment is set aside, and the judgment below is in all things affirmed.

On Appellant's Motion for Rehearing.

Rehearing denied.

BOND, Chief Justice (dissenting).

On appellee's motion for rehearing, Mr. Justice YOUNG dissenting to our original opinion, Mr. Justice CRAMER concurring, the dissent therefore becomes the opinion of this court affirming the judgment of the trial court; and the writer adhering to our former decision, such becomes his dissent, adopting the reasons and conclusions therein, thus reversing and remanding the case for trial on the merits.

The gist of the offense, as seen from appellant's pleading, is the combination, and the overt acts are only evidentiary of such combination. Neither the statutes nor the decisions of this State provide that the overt acts are necessary for the completion of the statutory prohibition. The substance of the prohibition of the statute is complete when the contract or conspiracy is entered into. It is an independent wrong for which the parties can be prosecuted under the statutory remedies. Rice v. State, 121 Tex.Cr.R. 68, 51 S.W.2d 364. The prohibition is more succinctly stated in the case of Short v. United States, 4 Cir., 91 F.2d 614, 621, 112 A.L.R. 969, wherein it is stated that "the crime is the conspiracy and not the overt act."

In some jurisdictions there is a statutory requirement that an overt act be proved. Even in those cases, it is held that the overt act proved need not even be unlawful, so long as it is done pursuant to such a combination as would amount to a conspiracy in law. 6 Am.Eng.Ency. of Law 837. Therefore when the appellees entered into the combination that created or tended to create a restriction in the free pursuit of the business of constructing municipal electric light and power systems. the prohibi-

tion of the statute was effectively completed. It naturally follows that it is not material to the pleadings of the appellant that the acts done pursuant to the conspiracy were lawful or unlawful.

The act of the engineer Gieb in seeking and obtaining employment by the municipalities, or his acts in preparing the plans and specifications, the acts of Fairbanks-Morse in selling its engines to Universal Electric Company of Alabama, or the acts of Universal Electric in buying its engines only from Fairbanks-Morse, or in accepting the bonds in payment for its construction work, are each and all lawful. However, these do not constitute a defense to the prohibition of the statute. The gravamen of the offense is not the performance of the individual acts of the conspirators, which acts may be lawful in themselves, but the conspiracy, understanding, and agreement to combine their capital, skill or acts for the purpose of carrying out restrictions in the lawful pursuit of lawful businesses; that is, of competitive bidding on the construction of municipal electric light and power plants as alleged.

On appellant's contention that the trial court erred in overruling their plea to the jurisdiction as to Fairbanks-Morse, it being a foreign corporation, abridges its right to interstate commerce because of which the United States Court has jurisdiction over the subject matter in suit. The trial court, on hearing of Fairbanks-Morse's plea in abatement, overruled the contention, finding that Fairbanks-Morse maintained no plants for the production of engines within this State, and that it manufactured all of its engines outside of the State of Texas and shipped them into Texas in interstate commerce, but that such interstate commerce was merely incidental to the unlawful transactions alleged in plaintiff's pleadings. This holding of the trial court was proper; and the majority in affirming the judgment of the trial court impliedly approved such finding. The question here involved is not the manufacture and sale of engines in Texas, but is the formation of the conspiracy to restrict the free pursuit of the business of the construction of municipal electric light and power plants in

Texas. The matter of manufacturing and shipping of the engines was but incidental to the accomplishment of the essential purposes of the conspiracy. As above pointed out, the conspiracy is the gravamen of the offense charged in the State's pleadings, not the carrying on of its business of the manufacture of engines and their shipment into Texas. The Fairbanks-Morse corporation is doing business in this State under a duly authorized permit, and at the time complained of in this suit, is alleged to have entered into the unlawful combination in restraint of trade in this State, a violation of the laws of this State. The corporation, therefore, is amenable to the laws of this State, and the courts of this State have jurisdiction of plaintiff's suit. The suit of the State in no way interferes with the defendant's lawful pursuit of its business of manufacture and sale of engines.

Appellees cite the cases of Glass v. Hoblitzelle, Tex.Civ.App., 83 S.W.2d 796; Albertype Co. v. Gust Feist Co., 102 Tex. 219, 114 S.W. 791; and York Mfg. Co. v. Colley, 247 U.S. 21, 38 S.Ct. 430, 62 L.Ed. 963, in support of the proposition that the allegations of the State's petition involve matters in interstate commerce, and that the courts of this State do not, therefore, have jurisdiction of this case. A careful reading of these decisions will disclose that they are not in conflict with the principle above announced, but, in fact, are authority therefor. At page 799 of 83 S.W.2d in the Hoblitzelle case, the court says: "There was no inherent and intrinsic relation between the undertaking of the company to manufacture the films, and to ship them to Lubbock, and the company's undertaking to publicly exhibit the films in the theaters at Lubbock. The matter of manufacturing and shipping the films was but incidental to the accomplishment of the essential purpose of the contract; namely, the advertising at Lubbock, the business of Ligon, by the use of the films. The circumstance that interstate commerce was involved in the manufacture and shipment of the films does not alter the intrastate character of the public exhibition of the advertising matter contained in the films."

I feel that the opinion in the Hoblitzelle case and the authorities there cited support the ruling of the trial court on the plea to the jurisdiction that the manufacture by Fairbanks-Morse of engines used in the construction of municipal electric light and power plants alleged in the State's petition, outside the state and shipping them in interstate commerce into this State is but incidental to the essential purpose of the offense alleged in the State's petition, to-wit, that the conspiracy between the various appellees created or carried out restrictions in the free pursuit of a business authorized or permitted by the laws of this State.

A careful reading of the York Mfg. Co. case will disclose the same distinguishable feature pointed out by the court in the Hoblitzelle case, that is, that the subject matter of the contract involved was the sale of the refrigeration machinery and the installation was incidental to such sale. Here we have the exact reverse, even though the manufacture and sale of the engines by Fairbanks-Morse & Co. be interstate commerce, the offense alleged in the State's petition is the primary question at issue here and the sale of the engines is but incidental to the violation of the Anti-Trust Laws of this State by the conspirators acting entirely, wholly and solely within this State. I do not see how the Albertype case has any application to the question here involved for the reason that Albertype case simply involves the construction of a contract between a citizen of New York and a citizen of Texas to ship albums manufactured in New York to Texas for use by such citizen in Texas. We are not here dealing with a contract to manufacture engines outside of Texas, and ship them into Texas for resale in Texas, but are dealing with an alleged conspiracy to prevent or lessen competition and to create and carry out restrictions in the free pursuit of the business of the construction and installation of municipal electric light and power systems in Texas.

Carefully and thoughtfully have I considered all of appellees' counter-points of error; and finding no merit in any of them, therefore, appellant's contentions should be

sustained and the judgment of the trial court reversed and cause remanded to the trial court to be tried on the merits. I respectfully dissent to the majority affirming the judgment of the trial court.