

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

June 4, 1969.

Honorable Enrique. H. Pena
County Attorney
Room 201
City-County Building
El Paso,. Texas  79901

Opinion No. M-412

Re:  Does the formation of
non-profit food
cooperatives violate
the Texas antitrust laws?

Dear Mr. Pena:

You have requested our opinion on the following question, to-wit:

"Does the formation of an unincorporated non-profit food purchasing cooperative violate the Texas antitrust law?"

The facts,. as set out in your recent letter, are as follows:

A group of ultimate consumers formed an association for the purposes of purchasing food from wholesale grocery outlets and redistributing such food to its membership. Membership in the association requires the payment of dues and such memberships are open to the general public. Members of the association are not required to purchase exclusively through the association.

For the purposes of this opinion, the Texas antitrust laws may be divided into three categories, namely, "monopolies," as defined in Section 15.01; "trusts," in Section 15.02; and "conspiracies," in Section 15.03, Business and Commerce Code.

Section 15.01 Vernon's Civil Statutes, Business and Commerce Code, limits a "monopoly" to a combination or consolidation of two or more corporations under circumstances set out in that statute. As set out in your request, the food cooperatives in question are not incorporated, and therefore Section 15.01 is inapplicable.

Section 15.02 defines a "trust" as being a combination of capital, skill, or acts by two or more persons, established

- 2051 -

for the following purposes:

" . . .

"(b)  A 'trust' is a combination of capital, skill, or acts by two or more persons to

> (1) restrict, or tend to restrict, trade, commerce, aids to commerce, the preparation of tangible personal property for market or transportation, or the free pursuit of a lawful business; or

> (2) fix, maintain, increase, or reduce the price of tangible personal property, the cost of insurance, or the cost of preparing tangible personal property for market or transportation or

> (3) prevent or lessen competition in

>> (A) the manufacture, transportation, sale, or purchase of tangible personal property;

>> (B) the business of insurance;

>> (C) aids to commerce; or

>> (D) preparing tangible personal property for market or transportation; or

> (4) affect, control, or establish the price of tangible personal property, or the cost of transportation, insurance, or preparing tangible personal property for market or transportation; or

> (5) agree

>> (A) not to sell, dispose of, transport, or prepare tangible personal property for market or transportation, or

not to make an insurance contract, at a price below a common standard or figure;

(B) to maintain the price of tangible personal property, the charge for transportation or insurance, or the cost of preparing tangible personal property for market or transportation at a fixed or graded figure;

(C) to affect or maintain the price of tangible personal property or the cost of transportation, insurance, or preparing tangible personal property for market or transportation in order to preclude free competition between or among themselves or others in the sale or transportation of tangible personal property, in the business of transportation or insurance, or in preparing tangible personal property for market or transportation; or

(D) to pool, combine, or unite an interest they have in the sale or purchase of tangible personal property, or in the charge for transportation, insurance, or preparing tangible personal property for market or transportation so that the price of the tangible personal property, or charge for transportation, insurance, or preparing tangible personal property for market or transportation, might be in any manner affected; or

(6) regulate, fix, or limit the output of tangible personal property, or the amount of insurance undertaken, or the amount of work performed in preparing tangible personal property for market or transportation; or

> (7) refrain from engaging in business, or
> from buying or selling tangible per-
> sonal property for market or trans-
> portation; or"

After a careful examination of the cases interpreting
Section 15.02, and prior Article 7426, Vernon's Civil Sta-
tutes, which also defined a trust, we fail to find any
situation in which this statute has been applied to an
agreement or contract between ultimate consumers.  Inherent
in a typical antitrust arrangement is its ultimate purpose;
to raise or maintain consumer prices at non-competitive
levels.  A cooperative formed by ultimate consumers to gain
the advantage of volume purchasing, has the reverse effect;
that of fostering price competition.

Texas courts on many occasions have determined that an
unlawful combination exists, only when there is a union or
association of parties, which might have been otherwise in-
dependent and competing, for the accomplishment of one or
more of the proscribed purposes set out in Section 15.02
and Article 7426.  Gates v. Hooper, 90 Tex. 563, 39 S.W. 1079,
1080, (1897);  Padgitt v. Lone Star Gas Co., 213 S.W.2d 133,
(Tex.Civ.App. 1948); State v. Fairbanks-Morse & Co., 246 S.W.2d
647, (Tex.Civ.App. 1951).  The facts, as set out in your
opinion request, do not reflect a union or association of
competitors, hence, Section 15.02 is inapplicable to the
situation at hand.

Section 15.03 is also inapplicable to the facts as set
out in your opinion request.  There is no exclusive dealing
arrangement between the membership and the association, and
the members of such associations are free to purchase food
wherever they choose.

### S U M M A R Y

An association of ultimate consumers,
formed for the purpose of purchasing food
products from wholesale grocery outlets
and for the further purpose of redistributing
such food products to its membership, is
not in violation of the Texas antitrust
statutes, Sections 15.01, 15.02, and 15.03, V.C.S.,
the Business and Commerce Code.  This opinion

is limited to the question of the forma-
tion of ultimate consumer cooperatives
and is in no way intended as an interpre-
tation of the possible future acts of such
cooperatives.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Thomas W. Mack
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
George Kelton, Vice-Chairman

Charles Parrett
Bill Craig
Louis Neumann
Houghton Brownlee

W. V. Geppert
Staff Legal Assistant

Hawthorne Phillips
Executive Assistant